Dr. Lucien A. MOOLENAAR II, and
Phyllis Wallace

v.

ATLAS MOTOR INNS, INC., d/b/a
Frenchman's Reef Holiday Inn, and
Robert E. Fudge, Appellants.

No. 79–1498.

United States Court of Appeals,
Third Circuit.

Argued Dec. 3, 1979.

Decided March 3, 1980.

Jean-Robert Alfred (argued), Christiansted, St. Croix, V. I., for appellants; Douglas A. Brady, Christiansted, St. Croix, V. I., on brief.

James E. Dow, Jr. (argued), Pallme, Anduze, Mitchell & Dow, Charlotte Amalie, St. Thomas, V. I., for appellees.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Does a gentleman wearing open-toed dress sandals comply with the "elegantly casual" dress code of an exclusive nightclub in a Virgin Islands hotel? The management thought not and effected a citizen's arrest when the sandaled plaintiff refused to leave. A jury disagreed and awarded compensatory and punitive damages. We vacate the judgment and remand for a new trial because the trial judge declined to instruct the jury on the statutory rights of innkeepers to evict persons who violate the rules of the house.

Plaintiff, Dr. Moolenaar, sued the defendants, the owner and manager of the Frenchman's Reef Holiday Inn on St. Thomas, for emotional distress caused by his being subjected to a citizen's arrest at the hotel. He asserted that the defendants wrongfully relied on the dress code as a basis for their action. A jury awarded the plaintiff $10,000 in compensatory and $40,000 in punitive damages. Motions for new trial and judgment n.o.v. were denied, and this appeal followed.

In September 1976 plaintiff and his friend, Ms. Phyllis Wallace, went to see a ventriloquist perform in the Top of the Reef, a nightclub within the Frenchman's Reef hotel. The hotel was owned and operated by the defendant Atlas Motor Inns, Inc. Outside the entrance to the nightclub, but inside the hotel building itself, was a sign which read "Dress required: elegantly casual. Sleeves required for gentlemen."

Dr. Moolenaar was dressed in what he described as a light blue denim leisure suit with three-quarter length sleeves, open neck sport shirt, and open-toed "dress" sandals sans socks. At the Top of the Reef entrance, the maitre d' denied Dr. Moolenaar admission because his sandals did not satisfy the club's dress code. After a fruitless discussion with the maitre d', Dr. Moolenaar insisted on seeing the manager and walked to a table beyond the maitre d's stand to await his arrival. A security guard asked the doctor to leave but he refused. After one waitress, at the maitre d's direction, declined to serve him and his companion, Dr. Moolenaar walked to the nearby bar and ordered two glasses of wine which another waitress brought to him.

Within a short time, the hotel manager approached and introduced himself as Bob Fudge. After some brief conversation, he asked that the plaintiff leave the club and, when the request proved unavailing, directed the security guard to call the St. Thomas police. In the interim, an announcement was made to the club's patrons that the midnight show would be delayed because of an undefined disturbance.

Two police officers arrived soon afterward and, learning of the circumstances,

said they could not arrest Dr. Moolenaar because they had witnessed no crime. They advised Fudge that he could either press charges or make a citizen's arrest. Fudge then said to Dr. Moolenaar, "I will have to place you under arrest." One of the officers led Dr. Moolenaar out of the hotel and permitted him to drive his own car to the police station. He remained there for approximately an hour to an hour and forty-five minutes. When Fudge did not appear, the plaintiff was permitted to leave. No charges were ever filed.

Three weeks later, Dr. Moolenaar brought suit for false arrest and intentional infliction of emotional harm. At the conclusion of the testimony at trial, the defendant requested that the judge instruct the jury on two Virgin Islands statutes, authorizing hotelkeepers to evict persons under certain circumstances. The court refused these requests and charged that the defendant would have had the right to make a citizen's arrest if the plaintiff had been guilty of disorderly conduct. The claim of intentional infliction of severe emotional distress was also submitted to the jury which, after deliberation, returned a general verdict in favor of the plaintiff.

Defendants contend on appeal that the trial judge erred in submitting the issue of intentional infliction of emotional harm to the jury, that his instructions on the false arrest claim were inadequate, and that punitive damages should not have been awarded. We will discuss these points in turn.

■ The judge followed the language of § 46 of the Second Restatement of Torts [1] in explaining to the jury that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is liable in damages. The court emphasized the necessity of finding both that the defendant's conduct was extreme and outrageous and that the plaintiff suffered severe emotional harm before making an award. Before instructing on

that claim, however, the trial court should have determined in the first instance whether the plaintiff had established that the conduct complained of could reasonably be regarded as so extreme and outrageous as to permit recovery. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc); Restatement (Second) of Torts § 46, Comment h (1965).

■ The record does not support plaintiff's claim of outrageous conduct. Under Dr. Moolenaar's own evidence, the conduct of the defendant cannot be characterized as "extreme" or "outrageous." Indeed, it might have been offensive, distasteful, and lacking in consideration. But, according to the plaintiff's version, he was informed politely of the hotel's dress code and was refused admission only for alleged lack of compliance. Dress codes of varying degrees of formality are common at restaurants and nightclubs and insistence upon them by proprietors is not usually "extreme" or "outrageous."

Moreover, the embarrassment and humiliation that plaintiff described cannot be characterized as "severe emotional distress." The plaintiff said he lost three or four pounds because of anxiety within a few weeks after the incident, his sleeping pattern was altered, and he was embarrassed by newspaper reports that appeared soon after he filed suit. Although the testimony does describe some emotional disturbance, it was not so severe that reasonable persons would not be expected to endure it. Restatement (Second) of Torts § 46, Comment j (1965). The plaintiff did not establish the degree of intensity required to constitute a tort under § 46 and the issue of liability for intentional infliction of emotional harm should not have been submitted to the jury.

■ A distinction must be made, however, between the tort defined by § 46 of the Restatement and an award for emotional harm flowing from false arrest and im-

---

1. In the absence of local laws to the contrary, the Virgin Islands has adopted the rules of common law as expressed in the American Law Institute's restatements of law. V.I. Code Ann. tit. 1, § 4.

prisonment. If a plaintiff establishes liability for false arrest, he is entitled to compensatory damages for emotional distress, including embarrassment, humiliation, and anxiety. In that instance, it is not necessary to establish intent to cause extreme emotional distress nor is it required that the injury be severe. Liability is founded upon the false arrest, not the intent to inflict distress. *See* Restatement (Second) of Torts § 905(b) and Comment c (1979). Consequently, if upon retrial the plaintiff is able to prove false arrest and imprisonment, he would be entitled to claim compensation for emotional injury.

Defendants also argue that the trial judge erred in omitting several requested points in his instructions on the false arrest claim. The judge charged the jury in accordance with the Virgin Islands statute that a private person could make a citizen's arrest if a public offense had been committed or attempted in the presence of the arrester. V.I. Code Ann. tit. 5, § 3563. In describing the public offenses that might be relevant for jury consideration, the court explained two statutes prohibiting disturbances of the peace and of public meetings.[2]

■ The trial court refused, however, to charge on two statutes authorizing eviction of patrons who refuse to abide by the rules of the hotel. At trial the defendants had urged, somewhat vaguely, that these statutes related to the issues of liability for false arrest and the propriety of awarding punitive damages. We find that the statutes would have been relevant to a determination of damages but are unable, on the record before us, to discern any effect those statutes would have had on the question of liability.

The trial court read the statutes as applicable only to patrons of a hotel "who make use of the rooms held out as lodgings." The statutes provide in relevant part:

"A hotelkeeper or agent may exclude any person from enjoyment of any accommodation, facility or privilege furnished on his premises, and/or may exclude any person from the premises or any part thereof, by refusal to permit such person to enjoy the same or to enter or remain on the premises if such person—

(1) is intoxicated, [or] disorderly . . ."

V.I. Code Ann. tit. 27, § 406(a).

"Every hotelkeeper may, in a reasonable and appropriate manner, evict a person from his hotel (the hotel directed by him) when such person insists on violating the rules and regulations approved by said hotel in spite of having been notified about same and of having been warned that he should cease and desist violating these rules or regulations; or commits any act whatever, or does anything offensive to the guests of the hotel or anything damaging to the reputation, dignity or credit of the hotel, or through his acts does anything detrimental to the business of the hotel, whether or not it is specifically mentioned in any rule or regulation. The term 'person' as is used in this section, shall include, but without limitation, a guest or tenant of the hotel.

A hotelkeeper who reasonably believes that he has a right to evict any person from the premises of his hotel, shall first make known to the said person, either verbally or in writing, that his presence is not desired on the premises of the hotel;

2. In pertinent part, the two statutes read as follows:

"Whoever maliciously and willfully—(1) disturbs the peace or quiet of any village, town, neighborhood or person, by loud or unusual noise, or by tumultuous offensive conduct, or threatening, traducing, quarreling, challenging to fight or fighting [shall be guilty of an offense]."
V.I. Code Ann. tit. 14, § 622.
"Whoever—(1) Willfully disturbs or disquiets any assemblage of people met for . . .

any . . . purpose not unlawful in character, by noise, profane discourse, rude or indecent behaviour or any unnecessary noise, either within the place where the meeting is held, or so near as to disturb the order and solemnity of the meeting; or (2) without authority of law, willfully disturbs or breaks up any assembly or meeting not unlawful in its character [shall be guilty of an offense]."
V.I. Code Ann. tit. 14, § 624.

and at the same time he shall be asked to leave, either immediately, or at a specified date and time.

\* \* \* \* \* \*

In the event any person is illegally on the property of the hotel, the hotelkeeper may solicit the aid of any member of the police, and it shall be the obligation of every member of the Police Force, at the request of the hotelkeeper, to evict immediately such person from the property of the hotel . . . ."

V.I. Code Ann. tit. 27, § 407.

To support his interpretation, the trial judge referred to the statutory definition of guest[3] and to portions of § 407, such as the written notice provision, that obviously apply only to those who have secured lodgings. In our view, the court's narrow construction is not warranted by the plain wording of the legislation. The first sentence of the statute refers to a "person"— not merely a "guest." Indeed, at the end of the first paragraph, § 407 says that "the term 'person' as is used in this section, shall include but without limitation, a guest or tenant of the hotel." Thus, the language of the statute makes it clear that the term "person" means more than "guest" or "tenant."

Although § 407 provides for written notice, presumably for guests of the hotel, the same sentence also provides for verbal notice to a "person" that his presence is not desired on the premises and that he should leave immediately. In that situation, obviously, the unwanted "person" need not be a guest.

The two statutes are relevant to the issue of punitive damages because if the facts fall within the statutory perimeters, then the hotel had a right to evict the plaintiff and arguably could have expected assistance from the police in that endeavor. The refusal of the police officers to eject the plaintiff and their incorrect advice that the hotel manager had to use a citizen's arrest to remove Dr. Moolenaar are circumstances that would argue against punishing the defendants even if the plaintiff was entitled to compensatory damages.

The relevance of §§ 406 and 407 to liability for false arrest and imprisonment, however, is not as clear. The statute gives the hotelkeeper authority to evict—but that is not the same as the right of a citizen to arrest and imprison another. The authority to perform a citizen's arrest in the Virgin Islands is limited by statute to circumstances where a felony has been committed or as the trial court charged "for a public offense committed or attempted in his [the arrester's] presence." V.I. Code Ann. tit. 5, § 3563(1).

"Public offense" is not defined in the statute or in the criminal code that speaks of "crimes" or "offenses," V.I. Code Ann. tit. 14, § 1, although it is sometimes used interchangeably with those terms. *E. g.,* V.I. Code Ann. tit. 14, § 3(b)(1); *see Virgin Islands v. Rodriguez,* 300 F.Supp. 860 (D.V.I. 1969) (Maris, J.), *aff'd,* 423 F.2d 9 (3d Cir. 1970). Several states that have arrest statutes similar to that in the Virgin Islands treat "public offense" and "crime" synonymously. The California code, for example, equates the two terms. Cal. Penal Code §§ 15, 837 (West). Even those jurisdictions that have not statutorily defined "public offense" have construed it as encompassing felonies and misdemeanors. *See Sima v. Skaggs Payless Drug Center, Inc.,* 82 Idaho 387, 353 P.2d 1085 (1960); *Smith v. Hubbard,* 253 Minn. 215, 91 N.W.2d 756 (1958). Our research has not revealed any court that has given a more expansive meaning to the term.

■ Sections 406 and 407 do not designate conduct that violates their terms as either crimes or public offenses. Consequently, actions proscribed by those sections are not, per se, "public offenses," though it

---

3. " 'Guests' shall mean those individuals who have registered in a hotel and to whom rooms have been assigned but shall also include, for the purpose of this chapter, (1) tenants, and (2) any person entering the property of a hotel with the intention of being a guest and regardless of whether or not he has actually become a registered guest." V.I. Code Ann. tit. 27, § 401(3).

is conceivable, of course, that the same conduct may run afoul of such criminal statutes as disorderly conduct. Therefore, §§ 406 and 407 do not confer authorization for a citizen's arrest. We need not address any other potential relevancy of those sections to liability at this point, but leave that issue for development on retrial.

■ Defendants also contend that the district court erred in refusing to charge on the criminal trespass statute. V.I. Code Ann. tit. 14, § 1741.[4] The issue was not properly presented to the trial judge and, consequently, cannot be considered as error on appeal. Since the matter may recur on retrial, however, we feel that a brief comment is in order.

The Restatement approach[5] and that of the common law was that a citizen's arrest was permissible when a breach of the peace was present or imminent. That limited scope, however, was not incorporated into the Virgin Islands statute, which grants authorization when a "public offense" is implicated. As we have seen, that term is a broad one and consequently a citizen's arrest is not restricted to circumstances constituting a breach of the peace. On retrial, then, the district judge should consider whether criminal trespass could serve as a justification for the arrest in this case.

The judgment of the district court will be vacated and the case will be remanded for a new trial.

Costs on appellee.

---

4. V.I. Code Ann. tit. 14, § 1741 provides:

"Whoever enters upon the land of another without the consent of the owner or of the person in charge thereof, shall be fined not more than $50 or imprisoned not more than 30 days, or both."

5. Restatement (Second) of Torts § 119(c) (1965).