**JESUS ALVAREZ and LUISA ALVAREZ, Plaintiffs**

v.

**PUEBLO INTERNATIONAL, INC., Defendant**

Civil No. 269/1987

Territorial Court of the Virgin Islands

Div. of St. Croix

March 8, 1989

LOLITA D'JONES, ESQ., St. Croix, V.I., *for plaintiffs*

MICHAEL DUNSTON, ESQ. (LAW OFFICE OF ADRIANE DUDLEY), St. Thomas, V.I., *for defendant*

ELTMAN, *Judge*

## MEMORANDUM OPINION

The defendant, Pueblo International, Inc. ("Pueblo"), has moved for summary judgment on each count of the complaint in this action. In large measure because the plaintiffs have failed to oppose the motion with admissible evidence, we reluctantly conclude that there is no genuine issue as to any material fact. Consequently, summary judgment will be granted to the defendant.

## FACTS

Jesus Alvarez became a "bagger" with Pueblo in 1966 when he was 17 years old. Except for a few months in 1983, he remained a Pueblo employee for twenty years, ultimately becoming a receiving manager.

On the morning of February 26, 1986, Alvarez felt indigestion while at work. He went to the sales floor of the store, removed an envelope of Eno antacid salts from a box on the shelf, and returned the box to the shelf. He consumed the tablets and continued working. A few hours later, Pueblo's security director and the store

manager approached Alvarez and showed him the box of Eno salts. Alvarez admitted having taken the merchandise without authorization but claimed that the severity of his illness justified his action.

After being interviewed by Pueblo's personnel director, Alvarez was suspended. Upon his return, he attended a meeting at which members of the Pueblo security department, the personnel director and grocery managers listened to his account of the incident. After this meeting, he was fired.

Alvarez then located a part-time job with Roman Foods, a supplier to Pueblo. Allegedly, however, the president of Roman Foods was informed by Ralph Munchez, a Pueblo grocery manager, that the company would not permit former employees discharged for taking property from servicing Pueblo stores for other merchandisers. As a result, according to Alvarez, he was suspended after three weeks until he "fixed" his problem with Pueblo.

Alvarez then brought this action for 1) wrongful discharge, 2) breach of covenant of good faith and fair dealing, 3) interference with a contractual relationship, and 4) intentional infliction of emotional distress. Luisa Alvarez, his wife, seeks recovery for loss of consortium.

## DISCUSSION

In considering a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the evidence must be considered in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn against the movant. McGlinchey v. Hartford Accident and Indemnity Co., No. 88-1739, slip op. at 6 (3d Cir. Feb. 3, 1989). There is no genuine issue for trial, however, "[w]here the record taken as a whole could not lead a trier of fact to decide for the non-moving party." Matsushita Electric Industrial Co. vs. Zenith Radio Corp., 475 U.S. 547, 587 (1986). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Moreover, only evidence as would be admissible at trial may be considered. Rule 56(e); Colan v. Cutler-Hammer, Inc., 812 F.2d 356 (7th Cir. 1987), cert. denied, 484 U.S. 820, 108 S. Ct. 79. Neither hearsay statements not otherwise admissible nor unauthenticated documents may be considered in opposition to a summary judgment motion. Hamilton v. Keystone Tankship Corp., 539 F.2d 684 (9th Cir. 1976); Canada v. Blain's Helicopters, Inc., 831 F.2d 920 (9th

Cir. 1987). With these guiding principles in mind, we review the individual counts of the complaint.

## I. *Wrongful Discharge*

■■■ The acts alleged occurred prior to the enactment of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76, so that in order to maintain an action for wrongful discharge, the plaintiff must show that his employer violated some public policy in terminating his employment. Joseph et al. v. Tropical Shipping, 1988 St. T. Supp. 165 (D.V.I. July 20, 1988). The public policy claimed to have been offended by a defendant employer need not be explicitly expressed by statute. In Robinson v. Hess Oil Virgin Islands Corp., 19 V.I. 106, 110 (D.V.I. 1982), although no Virgin Islands statute regulated the use of employer polygraph examinations, the absence of an applicable statute was held persuasive but not dispositive in determining whether any public policy had been implicated in the plaintiff's wrongful discharge action. Although Robinson established the existence of a public policy exception to the employee-at-will doctrine in the Virgin Islands, the plaintiff bringing such an action under this exception must still demonstrate that the discharge was "contrary to a clear mandate of public policy." Moore v. A. H. Riise Gift Shops, 659 F. Supp. 1417, 1423 (D.V.I. 1987).

■■ According to Alvarez, other Pueblo employees who were found to have committed similar offenses were not fired as he was but merely suspended for two weeks. Assuming, arguendo, that such disparate treatment of employees rises to the level of a violation of "a recognized facet of public policy," Perks v. Firestone Tire and Rubber Co., 611 F.2d 1363 (3d Cir. 1979), Alvarez has attempted to support this claim not by admissible evidence but by hearsay references to how other employees purportedly were treated. Because the plaintiff has not opposed the motion for summary judgment with evidence which properly may be considered, the claim of wrongful discharge must be dismissed.

## II. *Breach of Covenant of Good Faith and Fair Dealing*

The plaintiff also contends that "standards of conduct" issued by the company encouraged him to believe that the corporate policies would be equally applicable to all employees. His discharge, he argues, was arbitrary, capricious, in bad faith and contrary to Pueblo's purported assurances of fair and uniform treatment. He

testified in deposition that, to the best of his knowledge, the reason he was fired was because he took the antacid salts. However, he relies upon the standards of conduct to infer a) a requirement upon Pueblo to apply a uniform and consistent approach to all personnel matters, and b) an entitlement to no greater disciplinary action than a suspension.

We are bound by the holding in Joseph, supra, that an essential element of this contract claim is fraud or deceit on the part of the employer. Alvarez has made no showing whatsoever of any fraud or deceit, or even of bad faith, on the part of the defendant. In Joseph, the plaintiffs conceded that their employer had actually believed that they had been involved in theft and had informed them that they were being discharged for that reason. Here, Alvarez himself admitted having taken the items and signed a written statement to that effect.

Discussion of the effect on Alvarez of the spirit of the company's rules, and whether or not those rules led him to believe that his employer would act one way or another is, in any event, superfluous. The written standards of conduct proffered by Alvarez are unauthenticated, objected to by the defendant, and therefore inadmissible for purposes of opposing summary judgment, as are the unsubstantiated, hearsay statements advanced by Alvarez and purportedly made by fellow Pueblo employees to the effect that they were suspended rather than fired for similar misconduct.

III. *Interference With a Contractual Relationship*

Alvarez alleges that his efforts to maintain another job after his discharge from Pueblo were thwarted by Ralph Munchez, a manager at Pueblo. Specifically, he claims that his subsequent employment with Roman Foods as a servicer of its merchandise in other stores, including Pueblo, was terminated after three weeks because Munchez informed the president of Roman Foods of Pueblo policy which prohibited from servicing its stores former employees who had been fired for theft. Further, he asserts that Munchez contacted personnel at Roman Foods in order to get him fired. But Alvarez testified in deposition that he had no personal knowledge of conversations between Munchez and anyone at Roman Foods, and the individuals from whom Alvarez claims to have obtained such information have signed affidavits denying that these

146

conversations occurred. There is, as a result, no genuine issue of fact to be determined.

IV. *Intentional Infliction of Emotional Distress*

 The plaintiffs seek compensation for the trauma they have experienced because of Mr. Alvarez's discharge. Before such a claim may be presented to a jury, a trial court must determine whether the plaintiff has presented sufficient evidence that the defendant's conduct "could reasonably be regarded as so extreme and outrageous as to permit recovery." Moolenaar v. Atlas Motor Inns, Inc., 616 F.2d 87, 89 (3d Cir. 1980). As a preliminary matter, the court must determine whether the defendant's conduct is sufficiently extreme as to permit recovery. Krushinski v. Roadway Express, Inc., 627 F. Supp. 934 (D. Pa. 1985).

 While there may be disagreement with the decision to fire the plaintiff, the defendant's exercise of its discretion in discharging Alvarez does not rise to the level of conduct

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

Cox v. Keystone Carbon Co. et al., 861 F.2d 390 (3d Cir. 1988), citing Restatement (Second) of Torts § 46, comment d. (1965). In addition, although the absence of any physical injury is not fatal to a claim for emotional distress, if the plaintiff has not suffered physical injury as a result of the defendant's conduct, the conduct must have been sufficiently extreme and outrageous to ensure the genuineness of the claim. Joseph, supra at 5; Restatement § 46, comment k. See also Moolenaar, supra at 89; Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 372 (3d Cir. 1986).

 Particularly since Alvarez worked at Pueblo since his youth and was suddenly fired, his reactions are understandable. The plaintiffs' abnormally elevated blood pressure and blood sugar, the frequent headaches experienced by Mr. Alvarez, debt arrearages and need for medication are also not surprising. Nevertheless, these disturbances may be said to typify the experience of persons "who find themselves suddenly unemployed." Joseph, supra at 6. Neither the defendant's conduct in discharging Alvarez nor the plaintiffs' reaction to that experience establish the elements of a claim for intentional infliction of emotional distress.

147

## V. *Loss of Consortium*

 ██ The final count of the complaint addresses Luisa Alvarez's claim for loss of consortium. Such an action is a derivative right; it is dependent upon and accrues only if the injured spouse has a cause of action against the same defendant. Benjamin v. Cleburne Truck & Body Sales, Inc., 13 V.I. 545 (D.V.I. 1976). The loss of consortium action of Luisa Alvarez accordingly does not survive the dismissal of the claims of her husband.

## CONCLUSION

The various counts of the plaintiffs' complaint fall either because admissible evidence has not been submitted in opposition to the motion for summary judgment or because the requisite elements of the claims for relief have not been established. It is undisputed, however, that a twenty-year Pueblo employee was fired for what seems a relatively minor infraction. Perhaps there were other circumstances which have not been disclosed; perhaps Pueblo had additional reasons to discharge Alvarez. Assuming that Alvarez was fired for this single offense, however, Pueblo deserves no salute for compassion. But, in this context, praise and blame are beside the point. For the reasons discussed, we have no choice but to grant summary judgment to the defendant, dismissing the complaint in all respects.

## ORDER

For the reasons stated in the memorandum opinion of even date, it is hereby

ORDERED that the defendant's motion for summary judgment herein is GRANTED and the complaint is dismissed.