NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1885
_____

WILBERT FRANCIS,

Appellant

v.

PUEBLO XTRA INTERNATIONAL, INC.;
XTRA SUPER FOODS CENTERS, INC.
_____

On Appeal from the District Court
of the United States Virgin Islands
District Court  No. 00-cv-00154
U.S. District Judge: The Honorable James T. Giles


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 16, 2010

Before: McKEE, *Chief Judge*, FUENTES and SMITH, *Circuit Judges*

(Filed: December 29, 2010)


_____


OPINION
_____


1

SMITH, *Circuit Judge.*

Wilbert Francis appeals from an order of the District Court of the Virgin Islands, which granted summary judgment on his Title VII claim in favor of Francis's former employer, Xtra Super Foods Centers, Inc., a grocery store.[1] The District Court had jurisdiction pursuant to 48 U.S.C. § 1612(a) and 28 U.S.C. §§ 1331, 1367. We have jurisdiction to review this final order under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

In 1982, Francis, who was still in high school, was hired as a grocery bagger at one of Pueblo's grocery stores in the Virgin Islands. Francis enjoyed several promotions, working his way up to the position of store manager. In 1994, Francis was promoted to the position of Assistant General Manager in the Virgin Islands.

At the time of Francis's promotion to the position of Assistant General Manager, Pueblo was experiencing financial difficulties. It closed its grocery stores in Florida in the mid-1990s. It took major steps to reduce its losses in its

---

[1]  Xtra Super Foods Centers, Inc., was a subsidiary of Pueblo Xtra International, Inc. Pueblo operated grocery stores in Florida, Puerto Rico, and the Virgin Islands. Francis sued both Pueblo and Xtra Super Foods. Thereafter, Pueblo filed a petition for Chapter 11 Bankruptcy on October 28, 2002. The District Court severed Pueblo from this action. After the District Court granted summary judgment in favor of Xtra Super Foods, Francis filed a notice of appeal specifically identifying Xtra Super Foods as the Appellee. Nonetheless, the grocery store was known as Pueblo. Francis refers to the Appellee as Pueblo. For that reason, we will refer to the Appellee as Pueblo.

stores in Puerto Rico, implementing price hikes on numerous products and terminating the employment of at least 492 employees in January of 1997.

The stores in the Virgin Islands were also losing money. In January of 1998, Pueblo focused on improving the economic picture of its Virgin Islands stores. Although layoffs would reduce the cost of operations, they were viewed at that time as a last resort. In restructuring its operations in the Virgin Islands, Pueblo eliminated the position of its General Manager in the Virgin Islands, moving him to its Puerto Rico offices. Francis's position as Assistant General Manager was also eliminated. Pueblo then created two Superstore Directors, one to oversee stores in St. Thomas, and the other to supervise stores in St. Croix. Pueblo transferred Francis into the position of Superstore Director for the St. Thomas stores. On June 1, 1998, after the St. Croix Superstore Director quit, Francis was promoted to the position of District Manager of the Virgin Islands stores.

That same month, Pueblo decided to increase prices on approximately 6,000 items. Francis voiced concerns about the legality of the price hike in light of contracts the store had with the "Women, Infants, and Children" program and because the hurricane season was approaching. Nonetheless, Pueblo implemented the price hikes.

Public opposition mounted, evidenced by formation of a group called

Concerned Consumers for Better Food Prices, an inquiry by a Virgin Islands'

legislator, and a public boycott.  In response, Pueblo prepared a letter to the

legislator leading the inquiry dated July 24, 1998.  The letter advised that during

Pueblo's thirty years in operation it had "care[d] for its employees, its customers

and the Virgin Islands community as a whole."  It pointed to the contributions it

had made as a taxpayer and to its support of the community at large.  It assured the

public that its prices were competitive, stating that "we are re-engineering our

operations to be able to maintain competitive prices, our current level of

employment and to avoid the continued losses experienced during the last five

years in the Virgin Islands in the amount of $5.6 million."

The letter to  the legislator bore signature lines for Francis, Leon George, the

Virgin Islands based Director of Human Resources, and Donald Harves, the Senior

Director of Operations Services.  Francis refused to sign the letter, explaining that

he was unable to "attest that some of the things" in the letter were actually true.

Pueblo also published excerpts from this letter in a local newspaper.  The

final paragraph of the letter stated that the

> undersigned, as the direct and responsible officers for Pueblo in the
> Virgin Islands, are committed to enforce and implement all actions
> and goals above explained.  We are committed to Pueblo's employees,
> customers and the community as a whole.  We do not play games or
> politics, we manage Pueblo's stores to achieve all these goals.  We
> proudly count on the assistance of all of our co-workers, and the

4

Territory can count on us.

Immediately below this paragraph appeared the names of Francis and George. The newspaper letter, however, did not contain either man's signature.

In August, George and Francis attended a meeting in Puerto Rico and were tasked with developing a plan to reduce Pueblo's labor costs in the Virgin Islands. Their plan called for 53 layoffs. Management, however, determined that it also had to eliminate a management position as sales continued to drop. Alice Echevarria, a Puerto Rico-based Human Resources executive with Pueblo, explained that she believed seniority needed to be a factor in deciding which executive would be laid off. Pueblo decided to discharge Francis, who had less seniority than George. On September 10, 1998, at a meeting with management in Puerto Rico, Francis and George learned that Francis would be laid off, along with 72 other employees. Thereafter, Harves, who was based in Puerto Rico, and George, who was in the Virgin Islands, managed Pueblo's Virgin Islands operations.

In February of 1999, Pueblo created the position of Virgin Islands Director of Sales and Marketing. Echevarria explained that this new position was created in response to criticisms from the corporate office that the Virgin Islands stores "needed to learn to do things differently in terms of merchandising. They reset all

our stores . . . Resetting means . . . changing the order of products, the aisles where they are placed, the things that you place in the middle  of the [aisles]."  Echevarria further explained that Pueblo was seeking "a complete change" as its current "settings and merchandising and marketing plans were old[,]" belonging "to a different school of marketing, to the old days[.]"  In other words, the new position was an attempt to inject "new merchandising techniques . . . that were more effective" in stimulating  spontaneous sales.  For that reason, Pueblo contacted a search firm to bring in someone "that was in tune with . . . today's merchandising and marketing strategies and settings, new style."  Pueblo hired Larry Hall in February of 1999.  Hall relocated from the continental United States to the Virgin Islands, and was paid a salary of approximately $20,000 more than Francis had been paid.  Echevarria explained that this position was not comparable to Francis's position as District Manager, which made him responsible for only the operation of the stores.  Rather, the Director of Sales and Marketing was "responsible for the direct implementation of the merchandising program for the Virgin Islands," for "oversee[ing] the operations of the stores," "work[ing] with the budgets," and working with senior management in Puerto Rico in formulating strategies.

In the meantime, in early January of 1999, Francis filed a charge of employment discrimination with the Equal Employment Opportunity Commission.

He alleged that he was terminated on the basis that he was an African American and because of his national origin as a native Virgin Islander. In July of 2000, Francis filed a complaint against Pueblo, alleging discrimination on the basis of race, national origin and ethnicity in violation of Title VII of the Civil Rights Act and Virgin Islands local law (Counts I and II), a breach of the implied duty of good faith and fair dealing (Count III), race discrimination in violation of 42 U.S.C. §§ 1981 and 1981a (Counts IV and V), a "false light" invasion of privacy claim, stemming from Pueblo's placement of his name placed on the letter that was published in the local newspaper (Count VI), and wrongful discharge under the Virgin Islands Wrongful Discharge Act (Count VII).

Pueblo moved for summary judgment on all counts. The District Court granted Pueblo's motion. This timely appeal followed. Francis contends that the District Court erred by granting summary judgment on his Title VII action, as well as the state law claims for breach of the implied duty of good faith and fair dealing, and the false light cause of action. With regard to Francis's Title VII claim, we agree with him that he has established a prima facie case of discrimination under Title VII. *See Pivirotto Innovative Sys., Inc.*, 191 F.3d 344, 354 (3d Cir. 1999).

Pueblo explained, however, that its economic straits prompted its reduction in force, which resulted in Francis's discharge, and that it decided to hire someone

in tune with new marketing and merchandising techniques. Francis adduced nothing that casts doubt upon the financial constraints within which Pueblo had to operate to remain viable. The fact that it filed for protection under the Bankruptcy Code confirms the company's fiscal problems. Furthermore, Pueblo explained that having decided to discharge one of the two management personnel in the Virgin Islands, it decided to discharge Francis because he had less seniority than George.

Francis asserted in the District Court, however, that Pueblo's articulated reason for his discharge was dubious. He argued that several months after he was discharged Pueblo hired Larry Hall as Director of Sales and Marketing for the Virgin Islands, at a salary in excess of Francis's salary. According to Francis, Hall's position included the duties which Francis had been responsible for until his termination. The District Court rejected this argument. It noted that the duties of Francis's position and Hall's position differed substantially as Hall had responsibility for, *inter alia*, working with senior management in Puerto Rico in formulating business strategies. Francis's position, in contrast, had been concerned only with store operations. The record supports the District Court's observations. For that reason, we will affirm the District Court's grant of summary judgment on

the Title VII claim.[2]

Francis also challenges on appeal the District Court's determination that his good faith and fair dealing claim failed as a matter of law. According to Francis, Pueblo breached this duty of good faith by publishing in a newspaper the letter to the Virgin Islands' legislator who had been critical of the company. This publication, according to Francis, constituted bad faith because the letter misrepresented to the public Pueblo's intent to maintain employment at its current level. Francis contends that Pueblo knew as early as January of 1998 that layoffs were a possibility.

The Virgin Islands' Code provides that "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4. Section 205 of the Restatement (Second) of Contracts states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." In *Robinson v. Hess Oil Virgin Islands Corp.*, 19 V.I. 106 (D. V.I.

---

[2] In an effort to demonstrate that Pueblo's reasons were pretextual, Francis cites not only its creation of the position of Sales and Marketing Director in February of 1999, which was filled by Larry Hall, but also the hiring of Hall's successor Julio Pineiro Torres in 2001. We conclude that the events that transpired in 2001 do not shed light on whether an illegitimate factor was a motivating cause of Francis's discharge in September of 1998.

1982), an employee claimed that his employer breached its duty of good faith and fair dealing when it authorized a negligently conducted polygraph examination and used the results as the basis for discharging him. The Court acknowledged that the employee might have to prove fraud, deceit or misrepresentation, but it concluded that the employee had set forth a prima facie case as there were sufficient facts to establish that the employer's actions may have "destroy[ed] or injur[ed] the right of the other party to receive the fruits of the contract." *Id.* at 112 (internal quotation marks and citation omitted). Subsequently, in *Alvarez v. Pueblo International, Inc.*, 24 V.I. 141 (Terr. Ct. V.I. 1989), the Court acknowledged that an employee could assert a breach of good faith and fair dealing claim and that an "essential element of this contract claim is fraud or deceit on the part of the employer." *Id.* at 146.

Here, the District Court acknowledged this authority and assumed that this good faith and fair dealing requirement applied to at-will employment. The Court determined that Pueblo's statement that it was "re-engineering its operations to be able to maintain . . . [its] current level of employment" was not fraudulent or deceitful. We agree. The statement revealed Pueblo's objective to become sustainable and to do so, if possible, without a loss of jobs. Accordingly, the statement was not false at the time it was published.

10

Furthermore, we note that a claim for the breach of a duty of good faith and fair dealing requires the plaintiff to demonstrate that a contract existed, Restatement (Second) of Contracts § 205 (specifying that the duty exists in "[e]very contract"), and that the defendant's conduct violated the plaintiff's "justified expectations" under the contract. *Id.*, cmt. a. Here, the implied contract arising from Francis's long-term at-will employment with Pueblo is between Francis and Pueblo. Yet Francis asserts that Pueblo lied to the Virgin Islands' legislator and the public. The fact that Pueblo may have acted contrary to the justified expectations of the legislator and the public does not establish that Pueblo breached the covenant of good faith and fair dealing in Francis's implied employment contract.[3]

Francis also takes issue with the District Court's conclusion that his claim for false light failed as a matter of law. He asserts that the Court erred because a false light claim does not require a showing that the defendant disclosed personal facts about the plaintiff. We agree with Francis that this tort "does not depend upon making public any facts concerning the private life of the individual." Restatement (Second) of Torts § 652E, cmt a. Rather, it is "enough that he is given

---

[3]  Because Francis did not demonstrate deceitful or fraudulent conduct on the part of Pueblo and because the alleged violative conduct does not injure the rights of a party to the contract, we need not decide whether the covenant of good faith and fair dealing applies to at-will employment.

11

unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false and so is placed before the public in a false position." *Id.*, cmt. b.   Comment c to the Restatement explains that this cause of action exists "only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. . . . It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position[.]" *Id.*, cmt. c.   We will affirm because there is not a major misrepresentation in this case to which a reasonable man would take serious offense.[4]  We will not disturb the District Court's order granting summary judgment in favor of Pueblo on Francis's false light claim.

We will affirm the judgment of the District Court.

---

[4]  Francis makes much of the fact that Pueblo's published letter falsely portrayed that he had signed it.  This inaccuracy, however, does not cast Francis in a false light.  The letter specifically advised the public that Francis was part of Pueblo's management in the Virgin Islands which was responsible for "implement[ing] the actions and goals" Pueblo had explained in the letter.  As a result, the letter conveys that the views set forth therein were Pueblo's, not Francis's personal views.