**LAURETTA CODRINGTON, Plaintiff**
**v.**
**THE VIRGIN ISLANDS PORT AUTHORITY, and**
**WENDELL HANLEY, Defendants**

Civ. No. 91-191(M)

District Court of the Virgin Islands

Div. of St. Croix

January 17, 1996

LEE J. ROHN, ESQ., *for Plaintiff*

GEORGE CANNON, ESQ., *for Defendant Virgin Islands Port Authority*

ALLAN A. CHRISTIAN, ESQ., *for Defendant Wendell Hanley*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

On October 31, 1995 the Court heard argument on separate motions for summary judgment filed by defendant Virgin Islands Port Authority ["VIPA"] and defendant Wendell Hanley ["Hanley"]. Plaintiff Lauretta Codrington ["Codrington" or "plaintiff"], an employee of VIPA and former secretary to Hanley, a maintenance supervisor at VIPA, instituted this suit alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ["Title VII"]. Codrington also alleges intentional infliction of emotional distress as a result of the sexual harassment and seeks compensatory and punitive damages. Because this Court finds there are genuine issues of material fact over most of the issues raised, Hanleys' motions for summary judgment are denied in part. Hanley's motion for summary judgment on issue of monetary damages under Title VII is granted. VIPA's motion for summary judgment is granted in part and denied in part.

## I. Summary Judgment Standard

Summary judgment is granted when there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Clint Aero, Inc. v. Ground Services, Inc.*, 25 V.I. 446, 448, 754 F. Supp. 57, 58 (D.V.I. 1990). The movant has the burden of informing the judge of the basis for its motion, and pointing to those portions of the pleadings, depositions, answers to interrogatories, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the movant has demonstrated an absence of a genuine issue of material fact, the nonmovant may not "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247 (internal quotations and citations omitted). All doubt is resolved in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983), *cert. denied*, 465 U.S. 1091, 79 L. Ed. 2d 910, 104 S. Ct. 2144 (1984). All of the evidence as testified by the plaintiff is taken as being true. *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

## II. VIPA'S Motion for Summary Judgment

### A. VIPA's liability under Title VII as an employer

VIPA asserts that it as a matter of law cannot be held liable for violating Title VII, even assuming the truth of Ms. Codrington's claims that Hanley did in fact sexually harass her. The Court does not agree. Viewing Codrington's allegations and deposition testimony in the most favorable light, she has clearly stated facts which, if true, would subject VIPA to liability.

Liability may be imposed under Title VII on the employer of a supervisor who has engaged in sexual harassment on a variety of bases, derived from agency principles. *Bouton v. BMW*, 29 F.3d 103, 106 (3d Cir. 1994). Employers may be held liable for their own negligence, such as "failure to discipline or fire, or failure to take

remedial action upon notice of harassment." *Id.* Employers are liable if they knew or should have known of the harassment and failed to take prompt remedial action, under the rationale that by failing to take prompt, remedial action the employers have contributed to a hostile work environment created by the supervisor. *Id.* at 110; *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990). Employers may also be held liable for what is called "quid pro quo sexual harassment," which occurs when the supervisor used apparent or real authority over an employee's job to extort sexual favors. The rationale is that the supervisor could not engage in the quid pro quo harassment without the authority granted by the employer, and the employer is liable whether or not it had actual knowledge of the harassment. *See, e.g., Bouton*, 29 F.3d at 106; *Karibian v. Columbia Univ.*, 14 F.3d 773, 777-78 (2d Cir.), *cert. denied*, 129 L. Ed. 2d 824, 114 S. Ct. 2693 (1994).

According to plaintiff's allegations and deposition testimony, Hanley's sexual harassment took the form of unwanted touching, kissing, requests for sexual favors, as well as a physical sexual assault during a visit to VIPA owned property. (Codrington Dep. dated Dec. 7, 1993 ("Codrington I Dep.") at 24-27. ). Codrington claims that this conduct created a hostile work environment and included quid pro quo harassment. She complained about the sexual harassment in a memorandum to Mr. James Boschulte, Hanley's boss in June, 1987. A meeting was held between Boschulte, Hanley and Codrington soon thereafter. Although Boschulte took no action on the claim, the sexual harassment ceased for approximately 10 months. In December of 1989, Codrington complained about Hanley to the director of VIPA, Mr. John Harding, because of the "problems existing between us on the job." (Codrington I Dep. at 65.) On ten minutes notice, Codrington attended a meeting with Hanley, Harding and several other management personnel in May of 1990. (*Id.* at 66, 75, 78-81.) Codrington did not respond affirmatively to Harding's questions about whether Hanley had been harassing her; her explanation was that she felt intimidated. (*Id.* at 79-80.) No action was taken.

In December 1990, Codrington was transferred to a position in the Aviation Department, which she contends was a make-work position with no job description and no real job duties.

(Codrington Dep. dated Mar. 15, 1995 ("Codrington II Dep.") at 6-8. ) It was not until October of 1991, after John Harding was replaced by Gordon Finch as Director of VI PA, that any rules and regulations were promulgated against sexual discrimination and harassment. (Hanley Dep. at 32-33.) It was another three months, until January of 1992, that VIPA conducted any investigation into Codrington's allegations of sexual harassment. After reviewing sworn allegations by Codrington and another female employee, and considering testimony by Hanley, Gordon Finch suspended Hanley for two weeks, because he concluded "there was sufficient convincing testimony . . . to substantiate [Codrington's and the other female employee's] charges of sexual harassment and/or unwanted sexual advances." (Memo dated Jan. 31, 1992 from Gordon Finch to Hanley, attached as "Dep. Ex. 32" to Hanley's Dep.)[1] VIPA argues that it is entitled to summary judgment because 1) prompt, remedial action was taken once notice of the harassment was given,[2] 2) VIPA has an effective grievance procedure[3] and 3) Hanley was not aided in his harassment by any apparent authority from VIPA, and did not actually possess any authority.[4] However, all three of these contentions depend on disputed, and therefore triable, issues of material fact.

---

[1] According to plaintiff's counsel, after returning to his job after the suspension, Hanley was awarded the Employee of the Year Award. (Pl.'s Mem. Opp'n VIPA's Summ. J. at 19.) Counsel for the plaintiff did not point out where in the record evidence of this fact lies. [1996 U.S. Dist. LEXIS 580, *8]

[2] See, e.g. Bouton v. BMW of North America, 29 F.3d 103, 107 (3d Cir. 1994) ("prompt and effective action by the employer will relieve it of liability" in a hostile work environment claim). Prompt and effective action will not relieve employers of liability in a quid pro quo claim. See, e.g. Karibian v. Columbia University, 14 F.3d 773, 777 (2nd Cir.), cert denied 129 L. Ed. 2d 824, 114 S. Ct. 2693 (1994)("Because the quid pro quo harasser, by definition, wields the employer's authority to alter the terms and conditions of employment — either actually or apparently — the law imposes strict liability on the employer for quid pro quo harassment.")

[3] See, e.g. Bouton, 29 F.3d at 110 (upholding judge's finding after bench trial that employer was not liable for hostile work environment because it had an effective grievance procedure). Existence of a grievance procedure does not automatically shield an employer from liability for creating a hostile work environment. Meritor Savings Bank v. Vinson, 477 U.S. 57, 72, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986). The question of whether a grievance procedure is sufficiently effective to relieve employer of liability is generally one of fact not easily amenable to summary judgment resolution. In addition, effective grievance procedures do not relieve employers of liability for quid pro quo harassment.

[4] If a harasser does not wield any authority, there can be no quid pro quo harassment. Karibian, 14 F.3d at 777. In addition, if the harasser has the authority, but does not use

 Taking the facts in the light most favorable to Codrington, as we have recited them above, we cannot say as a matter of law that VIPA's actions consisting of two meetings in 1987 and 1990, and an investigation and two week suspension of Hanley in 1992, represent prompt, remedial action. Similarly, it is for a trier of fact to determine whether VIPA's grievance procedure was sufficiently effective to relieve VIPA of liability on the hostile work environment claim.

 VIPA also claims that Hanley cannot be found to have engaged in quid pro quo harassment as a matter of law, because Hanley never threatened Codrington with the loss of her job, or a demotion, and she was not in fact demoted or fired. In addition, VIPA claims that Hanley did not have the authority, either real or apparent, to fire Codrington. However, Hanley testified in his deposition that he made the decision to give Codrington the job. (Hanley Dep. at 124.) In addition, after Codrington complained about the harassment, Hanley submitted poor evaluations of her work and did attempt to terminate her, (Hanley Dep. at 215-216), (a decision which was overruled by his superiors and Codrington was then transferred to the allegedly less desirable position she holds today). As one court of appeals has articulated:

> To establish a prima facie case of quid pro quo harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as a basis for decisions affecting the compensation, terms, conditions or privileges of her employment.

*Karibian*, 14 F.3d at 777. Codrington's evidence at this stage of the case, though disputed, clearly would make out a *prima facie* case of quid pro quo harassment for which VIPA can be held liable.

### B. Punitive Damages against VIPA

 VIPA argues that even if it can be held liable for sexual harassment committed by Hanley, it cannot be liable for punitive

---

it to aid his harassment by for example threatening to fire his subordinate, no quid pro quo harassment has taken place. Id.

damages. We agree and therefore dismiss the claim of punitive damages against VIPA.[5]

VIPA relies upon a decision of this Court holding that the Virgin Islands Water and Power Authority ["WAPA"] could not be assessed punitive damages absent express statutory authority for the imposition of such an award. *Powell v. V.I. Water and Power Auth.* 20 V.I. 579 (D.V.I. 1984). Powell rests on decisions that, as a general rule, public and/or municipal corporations are immune from an award of punitive damages. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1980); *accord Bolden v. Southeastern Pennsylvania Transp. Auth.*, 953 F.2d 807, 829-832 (3d. Cir. 1991). The purpose of punitive damages is to punish a wrongdoer for outrageous conduct and to deter others from similar conduct in the future. RESTATEMENT (SECOND) OF TORTS § 908(1). The goal of deterrence is not served by assessing punitive damages against a publicly owned corporation, because the cost of the damages will be borne by the blameless public for whom a punitive damage award is meant to protect. *Bolden*, 953 F.2d at 830; *Powell* 20 V.I. at 579-580. Just as the public would ultimately pay for punitive damages awarded against WAPA, an assessment of punitive damages against VIPA would have the same undesirable effect. Accordingly the punitive damages claim against VIPA will be dismissed.[6]

---

[5] Plaintiff originally sought punitive damages under both local law (i.e., her tort claim for intentional infliction of emotional distress and her alleged claim under the local civil rights statute) and Title VII of the Civil Rights Statute, as amended in 1991. 42 U.S.C. § 2000e. subsequently the plaintiff withdrew her claim for punitive damages under federal law, citing *Bolden v. Southeastern Pennsylvania Transp. Auth.*, 953 F.2d 807 (3d Cir. 1991). (See Plaintiff's Opposition to Defendant Hanley's Motion for Summary Judgment at 8, n.5). Thus plaintiff's claim for punitive damages remains only under her local law claims, if any.

[6] Plaintiff argues that because there is a $ 5000 statutory cap on the amount of punitive damages that may be awarded under the local civil rights statute, there is no fear that an award would be sizable and therefore burden taxpayers. (Plaintiff's Opp. to Def. Hanley's Mot. for Summary J. at 8, n.5). While Bolden notes that punitive damages awards may be sizable against publicly owned corporations and thus burden taxpayers, the concern over the size of the award is not the sole reason for disallowing punitive damages. *Bolden*, 953 F.2d at 830. For example, this Court has earlier referred only to the taxpayers bearing the cost of punitive damages and not to the amount of punitive damages. *Powell*, 20 V.I. at 581. What is most important in these decisions is that the cost of the punitive damages, even if small, would ultimately be borne by the public and thus not serve as punishment of the wrongdoer.

## C. Compensatory Damages against VIPA

■■■■ VIPA argues that Codrington may not recover compensatory damages, because compensatory damages are not available under Title VII for actions occurring before November 21, 1991, when the amendment containing a compensatory damages provision was passed, and because VIPA did not act intentionally. The Court agrees that compensatory damages are not available for violations of Title VII occurring before November 21, 1995. The Court also agrees that there is no evidence that VIPA acted intentionally, and thus Codrington may not recover compensatory damages against VIPA on the theory of intentional infliction of emotional distress. However Codrington has submitted evidence of Title VII violations ocurring after November 21, 1995 for which she may seek compensatory damages. In addition, she may seek monetary compensation in the form of backpay for violations occurring before or after November 21, 1995. Finally, although plaintiff asserts in various memoranda that she has stated a cause of action under the local civil rights statute, it is not clear from her complaint that she has stated such a claim. Thus as the complaint stands now, Codrington may not seek any damage remedies arguably available under the local statute that are not available under Title VII.

### 1. Compensatory Damages under Title VII.

On November 21, 1991, the Civil Rights Act of 1991 ["the 1991 Act"] was enacted which amended Title VII of the Civil Rights Act of 1964 by expressly providing for recovery of compensatory and punitive damages for certain types of violations. 42 U.S.C. § 1981a(a)(1995), as added by § 102 of the 1991 Act, Pub. L. 102-166, 105 Stat. 1071 [hereinafter "section 102"]. Before the 1991 Act, Title VII only provided for "equitable" remedies which included the monetary relief of backpay.[7]

---

[7] "If the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay. . . . or any other equitable relief as

The Supreme Court has recently addressed the question whether section 102 of the 1991 Act should apply retroactively. *Landgraf v. USI Film Products*, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). After examining the text and legislative history of the 1991 Act, the Supreme Court concluded that section 102 of the Act does not apply retroactively to conduct that occurred before the date of enactment. *Id.* at 1488. The Court reasoned that there is a strong presumption against applying laws retroactively which can only be overcome by clear congressional direction and that there is nothing in the text or legislative history of the 1991 Act evidencing such a clear intent. *Id.* at 1501-05. Noting that a new law operates retroactively if it increases liability for past conduct, the Court concluded that the compensatory damages provision of section 102 would have a retroactive effect if applied to conduct occurring before November 21, 1991. *Id.* at 1506.

■ Most of the events which Codrington alleges violated Title VII occurred before November 21, 1991, while Codrington was directly supervised by Hanley. Pursuant to the Court's holding in Landgraf, Codrington may not seek compensatory damages flowing from those pre-amendment events. However, Codrington also alleges that violations of Title VII continued after she was transferred from working under Hanley in December of 1990, although the sexual harassment by Hanley did indeed stop. Codrington may recover compensatory damages for such violations that occurred after November 21, 1991, even if such violations were not sexual in nature.

■ A plaintiff may establish a prima facie claim of violation of Title VII because of a hostile work environment based upon actions that are not sexual in nature. As the Supreme Court has stated, "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 91 L. Ed. 2d 49, 106 S. Ct. 2399. Such ridicule or insult need not be explicitly sexual in nature. The United States Court of Appeals for the Third Circuit has stated that "to constitute impermissible discrimination, the offensive

the court deems appropriate." Civil Rights Act of 1964, § 706(g), as amended, 42 U.S.C. § 2000e-5(g) (1995).

conduct is not necessarily required to include sexual overtones in every instance or that each incident be sufficiently severe to detrimentally affect a female employee." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir. 1990).

Codrington testified that at the Aviation Department, to which she was transferred in December of 1990, and where she has continuing work-related contact, she has been subjected to a hostile environment since November 21, 1991, which she claims was a direct result of her having filed a complaint about the sexual harassment to the United States Equal Opportunity Commission in July 1990 and having filed suit against VIPA in June of 1991.[8] Codrington testified that she was not given any job duties or even a desk in the Aviation Department. (Cod. Dep. II at 7-8.) She also said that her coworkers avoided her, that a "secret file" was distributed concerning her and that a woman less qualified than her was promoted to a higher position. (Cod. Dep. II at 27-30, 34-36, 40-44.) Her testimony is corroborated by the deposition testimony of Thomas P. O'Connor, who has worked as chief of safety and security at VIPA since March of 1992. O'Connor stated that he was given several documents by the supervisor of the Aviation Department, Mr. David Mapp during the first week of his employment concerning Codrington related to her filing of a sexual harassment complaint, and was told, "Ms. Codrington's a troublemaker. Be sure that you leave your office door open whenever she's in there with you. Read this and you'll know why." (O'Connor Dep. at 5) O'Connor also testified that Codrington was treated "poorly," that people in the office would offer no response to Codrington's greetings of "Good Morning" or "Good Afternoon," and described the work environment as "at times having been hostile." (O'Connor Dep. at 21.)

■ Viewing the facts concerning Ms. Codrington's employment after November 21, 1991 in the most favorable light to her,

---

[8] It is not clear from the deposition testimony whether the events that took place in the Aviation Department and which Codrington claims violate Title VII occurred before or after November 21, 1991. At least some of the hostile work environment events took place after that date because of the corroborating testimony of Thomas P. O'Connor who has only worked for VIPA since March of 1992. However, at trial, the parties must make clear exactly which events happened before and which after passage of the 1991 Amendments on November 21, 1991.

there is sufficient evidence that Title VII violations may have occurred after section 102 was added, for which she may seek compensatory damages.

## 2. Backpay

 VIPA asserts that because Codrington has been continually employed at VIPA and her pay has never decreased, "plaintiff has not suffered any loss of income, and so there is no issue of whether she is entitled to backpay." Codrington, however, claims that she was denied a promotion when someone with less experience within the department was promoted as secretary to the supervisor of the Aviation Department, Mr. Mapp. VIPA argues that it can not be held liable for denial of a promotion for a position that Codrington "had not even applied for." The fact that Codrington did not apply for the position, standing alone, does not as a matter of law defeat her claim that her failure to receive that position was a violation of Title VII. Courts have not required that a plaintiff must show that she applied for promotions before an employer can be held liable for failure to promote. *See, e.g. Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 761 (9th Cir. 1980) (immaterial that plaintiff was never rejected for a promotion; triable issue of fact as to employer's method of promoting employees). In this case, a factfinder could infer from the circumstances that Codrington was not selected to be executive secretary for Mr. David Mapp, as a result of, or in retaliation for her commencement of this sexual harassment suit. If Codrington can prove that not being promoted to secretary was a violation of Title VII, and the promotion would have entailed higher pay, she would be entitled to an award for backpay in the amount of the difference. *Landgraf,* 114 S. Ct. at 1491.[9]

## 3. Compensatory Damages for Tort Claim

It is undisputed that a plaintiff is entitled to compensatory damages for the common law tort claim of intentional infliction of

---

[9] "Under prior law a Title VII plaintiff could [] recover monetary relief [if] the discrimination was also found to have some concrete effect on plaintiff's employment status, such as a denied promotion, a differential in compensation . . . ." *Landgraf,* 114 S. Ct. at 1491 (emphasis added).

emotional distress. While not mentioning Codrington's intentional infliction of emotional distress claim, VIPA does state that compensatory damages "cannot be imputed to VIPA since VIPA did not act intentionally nor with reckless disregard . . ." VIPA thus appears to argue that there are no facts to support Codrington's tort claim from which it might be found that VIPA acted intentionally. We agree that Codrington has not stated facts which support an intentional infliction of emotional distress claim against VIPA, and therefore she may not seek compensatory damages from VIPA under such a claim.

An intentional infliction of emotional distress tort is committed when, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . ." RESTATEMENT (SECOND) OF TORTS, § 46. *See Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir. 1980); *Moolenaar v. Atlas Motor Inns, Inc.,* 616 F.2d 87 (3d Cir. 1980); *Alvarezv v. Pueblo Int'l, Inc.,* 24 V.I. 141, 147 (Terr. Ct. 1988) (the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," citing RESTATEMENT (SECOND) OF TORTS, § 46, cmt. d).

 The only conduct that Codrington has alleged as sufficient to sustain an intentional infliction of emotional distress claim is Hanley's harassment, including his physical, sexual assault. However, no matter how atrocious the behavior of Hanley, his intentional actions cannot be imputed to VIPA. It is the law of most jurisdictions, as well as the law in the Virgin Islands, that an employer cannot be held liable for the tort of a person who intentionally injures an employee when that person is merely a supervisor or manager and not the employer in person nor a person who is realistically the alter ego of the corporation. *Chinnery v. Government of the Virgin Islands,* 865 F.2d 68 (3d Cir. 1989); 2A Larson, Workmen's Compensation Law, § 68.21(a)(Supp. 1994). In Chinnery, a garbage truck driver brought a tort suit against the Government of the Virgin Islands arising from assault and battery committed by his supervisor in the course of employment. The United States Court of Appeals for the Third Circuit ruled that the supervisor's intentional conduct "[could] not be imputed to

257

the Government since [the supervisor] was not acting as the Government's alter ego, nor was his misconduct directed or authorized by the Government." *Chinnery*, 865 F.2d at 73.

■ To prevail on a claim for intentional infliction of emotional distress by VIPA, VIPA's conduct itself must have been so outrageous and so beyond all bounds of decency to be considered atrocious and utterly intolerable in a civilized society. VIPA's conduct in failing to take prompt remedial action when notified of Hanley's harassment, while not to be condoned and in itself a violation of Title VII, as a matter of law is simply not the extreme and outrageous conduct to constitute a predicate for the tort of intentional infliction of emotional distress.

Other courts have held that conduct that gives rise to Title VII liability does not necessarily support a claim for intentional infliction of emotional distress. *See, e.g., Stingley v. State of Ariz.*, 796 F. Supp. 424, 431 (D.Ariz. 1992) (holding that Title VII statutory discrimination occurs at a much lower threshold of inappropriate conduct than the threshold required for the tort of intentional infliction of emotional distress); *Anspach v. Tomkins Industries, Inc.*, 817 F. Supp. 1499, 1507 (D.Kan. 1993). In Anspach a female employee of the defendant company alleged that she was sexually harassed by Coworkers, that the company failed to take adequate remedial actions, and that the company retaliated against her for opposing sexual harassment by altering the method in which she operated her machine and demoting her husband. *Anspach*, 817 F. Supp. at 1508. The court found that no reasonable jury could find that this conduct was so extreme and outrageous as to make the company liable for intentional infliction of emotional distress. *Id.* While the court acknowledged that the company's actions may have been done in retaliation, "there must be something more, something about the manner in which the retaliation occurred, that makes the conduct actionable in tort, beyond merely supporting a claim for employment discrimination." *Id.* at 1508-09.[10]

---

[10] Some courts have held that failure to take prompt, remedial action can support a claim for intentional infliction of emotional distress. My brother judge on St. Croix, the Honorable Raymond L. Finch, in denying a 12(b)(6) motion to dismiss in a similar

## 4. Damages under the Virgin Islands Civil Rights Statute

Plaintiff argues that she has stated a claim under the Virgin Islands Civil Rights Act ["local act"] which entitles her to damages. V.I. CODE ANN, tit. 10, § 61 et. seq. ["Title 10"].[11] While plaintiff assumes she has stated a cause of action for violation of the local act, Title 10 is never cited in her complaint. Arguably, the only reference to the local act in her seven page amended complaint filed June 23, 1994, is the allegation that she "timely filed a complaint with the Civil Rights Commission of the Virgin Islands of the United States alleging employment discrimination and retaliation by defendant VIPA." (Amended Complaint, at 2.) In the numbered counts of the amended complaint, Codrington alleges only that the defendants' conduct violated the federal civil rights law, 42 U.S.C. section 2000e-2, and constituted the tort of intentional infliction of emotional distress.

██ Federal procedures governing the filing of employment discrimination suits require that before an aggrieved person may bring a federal lawsuit for sexual harassment, that person must first file a complaint with the local agency that deals with employment discrimination, if one exists, and wait sixty days. 42 U.S.C. § 2000e-5(c). Thus the fact that Codrington in her complaint acknowledges that she filed a complaint with the Civil Rights Commission simply demonstrates compliance with federal law,

---

sexual harassment suit, has stated that a "corporation may be found liable for the intentional infliction of emotional distress where a supervisor/decision/maker is made aware of the sexual harassment of the employee but outrageously fails to investigate the claim or take any steps to address it." *Ivy Dawson v. Hess Oil Virgin Islands Corp.*, Civ. No. 1990-162 (July 25, 1995). My decision to hold that VIPA as a matter of law may not be found liable for intentional infliction of emotional distress is made with the benefit of looking at all the evidence that will be presented by the plaintiff. Even viewing this evidence most favorable to plaintiff, VIPA's conduct does not rise to the level of "outrageously failing to investigate." Codrington concedes that the harassment ceased for a period of time after the first meeting with Boschulte. Codrington also concedes that she did not speak up about the harassment at the meeting in May of 1990. That no investigation took place after these complaints, while perhaps in violation of Title VII'S mandate to take prompt, remedial action, does not amount to an "outrageous" failure to act. In addition, Hanley was investigated in January of 1992. While not prompt action for Title VII purposes, the fact that an investigation and suspension eventually occurred mitigates any claim of extreme and atrocious conduct on VIPA's part.

[11] Although the plaintiff does not make this argument in response to VIPA's motion for summary judgment, she does make the argument in response to defendant Hanley's motion for summary judgment. (See Pl's Opp. Hanley's Mot. Summ. J., at 4.)

and does not alone state a separate cause of action under the local act.

 It should be noted that even if Codrington were to attempt to amend her complaint at this late date to assure that she stated a separate cause of action under Title 10, it is not clear that the local act even creates such a right. The local law does state that "it shall be an unlawful discriminatory practice. . . for an employer, because of . . . sex . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." V. I. CODE ANN., tit. 10, § 64. However, the power to enforce this provision is vested in the Virgin Islands Civil Rights Commission which may, if appropriate, file a civil action, in which case the "person aggrieved may recover damages as provided in this title." *Id.* § 72. Nowhere in the statute is it established that an aggrieved individual may directly bring an action for violation of section 64. Not having knowledge of whether and to what extent the Civil Rights Commission is active, the Court declines to address whether its analysis and conclusion would change if the Civil Rights Commission is either non-existent or non-functional.

### III. Defendant Hanley's Motions for Summary Judgment

Defendant Hanley has filed three motions for summary judgment requesting that the Court 1) find that as a matter of law Hanley is not liable for monetary damages for any claim of sexual discrimination or harassment, 2) dismiss Codrington's intentional infliction of emotional distress claim because of insufficient evidence of severe emotional distress and 3) dismiss Codrington's claims alleging discrimination in violation of the local Civil Rights Act. Because Title VII does not allow recovery of punitive and compensatory damages for conduct that occurred before November 21, 1991, the Court grants Hanley's motion for summary judgment on the damages issue with respect to Codrington's Title VII claim only. The Court denies Hanley's motion to dismiss Codrington's claim for intentional infliction of emotional distress. The Court does not address Hanley's motion to dismiss Codrington's claims under the Civil Rights Act of the Virgin islands, because it does not appear to the Court that Codrington has even alleged any causes of action under local law.

## A. Compensatory and Punitive Damages

██ As discussed above, the 1991 amendments to the Civil Rights Act of 1964 added provisions for recovery of compensatory and punitive damages, which the Supreme Court ruled could not be applied retroactively to conduct that occurred before November 21, 1991. Because Hanley was no longer Codrington's supervisor by December of 1990, he cannot be held liable for any punitive or compensatory damages under Title VII for his alleged sexual harassment of Codrington during the time that she worked for him. However, because Hanley's sexual harassment forms the basis of Codrington's intentional infliction of emotional distress claim, he can be held liable for punitive and compensatory damages under Codrington's tort claim. In addition, Hanley could be liable if Codrington was denied promotions or pay raises because of Hanley's harassment. Since Codrington has not produced evidence that she was denied any pay raises or promotions while working for Hanley, Hanley cannot be liable for back pay. The only promotion that Codrington claims she was denied was as secretary to Mr. Mapp while Codrington was no longer in Hanley's department. Accordingly, Hanley cannot be held liable for denial of a promotion outside of his department for which he had no responsibility.

## B. Intentional Infliction of Emotional Distress

██ Hanley argues that Codrington has submitted no evidence that plaintiff has suffered from severe emotional distress caused by him. On the contrary, Codrington has submitted evidence from which it could be found that she suffered severe emotional distress. She alleges that Hanley repeatedly subjected her to unwanted touching, kissing and sexual propositions. She also alleges that he attempted to rape her on one occasion while on VIPA business out of the office. Such behavior, if true, is clearly outrageous enough to support a claim for intentional infliction of emotional distress, even without proof of resultant bodily harm. RESTATEMENT (SECOND) OF TORTS, § 46, comment k (if conduct is sufficiently extreme and outrageous, liability may exist for distress alone without bodily harm).

## IV. Conclusion

For the foregoing reasons, plaintiff's claim for punitive damages against VIPA is dismissed. In addition plaintiff may not seek compensatory or punitive damages against VIPA or Hanley for violations of Title VII that occurred before November 21, 1991. Codrington may seek back pay from VIPA for her claim that she was denied a promotion to secretary while working in the Aviation department, but may not seek back pay from Hanley. However, Codrington may seek compensatory and punitive damages from Hanley for intentional infliction of emotional distress, but not from VIPA.

ENTERED this 17th day of January, 1996.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that on the issue of punitive damages, the motion for summary judgment by defendant Virgin Islands Port Authority ["VIPA"] is GRANTED, and it is further

ORDERED that on the issue of compensatory damages, the motion for summary judgment by defendant VIPA is GRANTED in part and that plaintiff may not seek compensatory damages against defendant VIPA for violations of Title VII that occurred before November 21, 1991, and it is further

ORDERED that plaintiff's claim of intentional infliction of emotional distress is DISMISSED against VIPA only, and it is further

ORDERED that on the issue of monetary damages, defendant Wendell Hanley's motion for summary judgment is GRANTED in part, and that plaintiff may not seek compensatory or punitive damages against defendant Wendell Hanley for violations of Title VII that occurred before November 21, 1991, and it is further

ORDERED that the parties simultaneously submit briefs, with all relevant authority, no later than 5 pm Wednesday, January 24, 1996, on which of the remaining issues are to be tried to the Court and which issues must be submitted for a decision by a jury.