**WENDELL HANLEY, Appellant**

**v.**

**VIRGIN ISLANDS PORT AUTHORITY, Appellee**

Civ. App. No. 1998/0086A

District Court of the Virgin Islands

Div. of St. Croix

July 7, 1999

ALLAN A. CHRISTIAN, ESQ., Frederiksted, St. Croix, U.S.V.I., *for Appellant*

GEORGE W. CANNON, JR., ESQ., Frederiksted, St. Croix, U.S.V.I., *for Appellee*

MOORE, *Judge*

## OPINION

**PER CURIAM**

Appellant Wendell Hanley ["Hanley"] appeals the decision of

the Territorial Court ["trial court"] to grant the summary judgment motion of appellee Virgin Islands Port Authority ("VIPA") and to deny the summary judgment motion of appellant Hanley. Hanley also challenges the trial court's reliance on a document which he alleges is hearsay. VIPA claims that Hanley's appeal is frivolous and that it is therefore entitled to damages and costs pursuant to Fed. R. App. P. 38.

## I. FACTS

This is an action for recovery of the attorney's fees Hanley incurred in defending against a lawsuit brought by Lauretta Codrington ["Codrington"], a prior VIPA employee, against both Hanley and VIPA ["underlying action"]. In her complaint in the underlying action, Codrington alleged that VIPA engaged in sexual discrimination and harassment in violation of 42 U.S.C. § 2000e-2. (See Appendix ["App."] at 97-98.) The discrimination and harassment was allegedly committed by Hanley, as VIPA's supervisor of maintenance. (See id. at 98-100.) Codrington served as Hanley's secretary from April of 1986 until December of 1990. (See id. at 97.) In her complaint, Codrington also alleged that, as result of Hanley's behavior, Hanley and VIPA intentionally inflicted emotional distress upon her. (See Codrington Complaint at 6 (page missing from Appendix).) All parties to the underlying lawsuit filed motions for summary judgment which were granted in part and denied in part. (See Codrington v. Virgin Islands Port Auth., 33 V.I. 215, 911 F. Supp. 907 (D.V.I. 1996).) Subsequently, the parties to the lawsuit settled the claims, and the lawsuit was dismissed.

Hanley and Codrington knew each other before her employment at VIPA. Hanley met Codrington in 1977. (See App. at 108.) At his deposition in the underlying matter, Hanley explained that their relationship was sexual: he had sex with her approximately five times between 1977 and 1979. (See id. at 115, 119, 124.) During this period he gave Codrington more than $200.00. (See id. at 125.) Their sexual relationship resumed in 1985. (See id. at 127.) Hanley admitted to having sex with Codrington once in 1985, 1986, and 1988. (See id. at 129, 142.) He also admitted to getting Codrington her job at VIPA as his secretary. (See id. at 128.) Hanley denied that

Codrington ever told him that she did not want him to touch her. (*See id.* at 134.) Hanley explained that his relationship with Codrington became strained in 1989 when she was caught stealing from VIPA. (*See id.* at 143.) At issue were $11.00 in vouchers provided to Codrington by VIPA for use at a seminar Codrington was to attend for work. (*See id.* at 145.) Codrington cashed the vouchers before she attended the seminar and, when the seminar was subsequently canceled, she allegedly failed to return the money. (*See id.*) Codrington attempted to clarify the situation and absolve herself of any wrongdoing in a letter she drafted to John Harding, VIPA Executive Director. (*See id.* at 29.) These events occurred in 1987. (*See id.*)

On February 15, 1990, Codrington sent a letter to Harding informing him that Hanley had been sexually harassing her since her employment at VIPA began. (*See id.* at 317.) On May 15, 1990, Codrington, Hanley, and Harding attended a hearing to address Codrington's sexual harassment claim. (*See id.* at 324.) At the hearing, Codrington indicated that the harassment had ceased. (*See id.*) Subsequently, Hanley drafted a series of memoranda criticizing Codrington's job performance. (*See id.* at 22-23, 25-27.) These memoranda are dated May 23, 1990, February 13, 1990 (Revised May 30, 1990), June 19, 1990, June 20, 1990, and August 14, 1990. (See id.) Codrington's lawsuit against Hanley and VIPA followed.

After that suit settled, Hanley filed the present action against VIPA in Territorial Court on April 19, 1996, seeking indemnification for the costs and attorney's fees he incurred in defending the underlying action. On May 13, 1997, Hanley filed a motion for partial summary judgment and a memorandum of law in support thereof. He filed an additional memorandum in support of his summary judgment motion on May 27, 1997. On May 30, 1997, VIPA filed an opposition to plaintiff's motion as well as its own motion for summary judgment. On June 6, 1997, Hanley filed an amended motion for summary judgment. On March 2, 1998, the trial court issued a memorandum opinion and order, dated February 27, 1998, granting VIPA's motion and denying Hanley's motion. Hanley filed a notice of appeal on March 3, 1998.

## II. DISCUSSION

### A. Scope of Review

This Court has jurisdiction to review the judgments and orders of the Territorial Court in all civil cases. *See* 4 V.I.C. § 33. The Court's review of questions of law is plenary. *See Nibbs v. Roberts,* 31 V.I. 196, 204 (D.V.I. App. Div. 1995).

Fed. R. Civ. P. 56 provides that summary judgment may be granted only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir. 1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249-50.

221

## B. The Trial Court's Determination

The trial court granted VIPA's summary judgment motion and denied Hanley's motion, finding that VIPA was not responsible for Hanley's attorney's fees and costs because his conduct with regard to Codrington did not occur within the scope of his employment. The court cited an Oklahoma Supreme Court decision for the proposition that an employer is only liable for a tort committed by one of his employees against a third person if the tort proximately resulted from acts of the employee done within the scope of his employment. (*See* App. at 346 (citing *Mid-Continent Pipeline Co. v. Crauthers*, 267 P.2d 568, 571 (Okl. 1954)).) The court concluded that the tort Hanley allegedly committed was "sexual discrimination," which consisted of "having a sexual relationship with Codrington." (App. at 346.) In reaching this conclusion, the court failed to consider all of Codrington's allegations against Hanley, which included acts of retaliation such as the drafting of memoranda critical of Codrington. After concluding that the tort Hanley allegedly committed was sexual discrimination, the court looked to the Restatement (Second) of Agency § 228 (1957)[1] to determine whether Hanley committed the tort within the scope of his employment.[2] (*See id.* at 346-47.) Again without considering Hanley's allegedly retaliatory actions, the court found that he did not. (*See id.* at 347.) The court then looked to Restatement (Second) of Agency § 438 (1957),[3] which outlines the conditions under

---

[1] The Restatement (Second) of Agency § 228 (1957) states as follows:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master; and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

[2] Pursuant to 1 V.I.C. § 4, the rules of decision in the courts of the Virgin Islands are the restatements of law where there exist no local laws to the contrary.

[3] The Restatement (Second) of Agency § 438 (1957) states as follows:

(1) A principal is under a duty to indemnify the agent in accordance with the terms of the agreement with him.

which an employee must be indemnified by his employer. (*See id.* at 347-48.) The court concluded — without any consideration of relevant facts — that Hanley did not present any evidence which would satisfy these conditions. Based on these findings, the court granted VIPA's summary judgment motion and denied Hanley's summary judgment motion. (*See id.* at 348.)

## C. Appealing the Trial Court's Determination

### 1. *Scope of Employment*

The trial court found that Hanley's alleged conduct with regard to Codrington did not occur within the scope of his employment, as that phrase is defined in Restatement (Second) of Agency § 228 (1957). Hanley disputes this finding, claiming that the conduct which Codrington challenged in her complaint — specifically his criticism of Codrington's work — was committed within the scope of his employment. (*See* Appellant's Br. at 11-12.) Despite the emphasis which has been placed on the scope of Hanley's employment and whether his alleged actions with regard to Codrington were committed within it, the trial court need not have concerned itself with this issue.

The doctrine of respondeat superior is used to determine an employer's liability to third persons for the actions of its employees. *See* 27 Am. Jur. 2d Employment Relationship § 464 (1957) (describing an employer's liability to a third party for its employee's intentional tort). The doctrine is not used to determine whether an employer is obligated to indemnify its employee for expenses incurred in defending against a third person's lawsuit. Therefore, even if Hanley were acting within the scope of his employment when he allegedly committed the acts upon which Codrington's lawsuit was predicated, the Court could not conclude from this determination that VIPA must indemnify Hanley for the costs of defending against the lawsuit.

_____

(2) In the absence of terms to the contrary in the agreement of employment, a principal has a duty to indemnify the agent where the agent
(a) makes a payment authorized or made necessary in executing the principal's affairs or, unless he is officious, one beneficial to the principal, or
(b) suffers a loss which, because of their relation, it is fair that the principal should bear.

## 2. *Duty to Indemnify*

The trial court found that pursuant to Restatement (Second) of Agency § 438 (1957) Hanley was not entitled to indemnification from his employer, for he did not prove that an indemnification agreement existed between the parties, that he made an authorized payment for his employer, or that he suffered a loss that it was fair for his employer to bear. (*See* App. at 347-48.) Hanley challenges this determination, arguing that it is in fact fair to make VIPA bear the burden of paying his attorney's fees in the underlying action. (*See* Appellant's Br. at 13.) He also invokes Restatement (Second) of Agency § 439(d) which provides for indemnification by an employer of an employee for the "expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith." (*See id.* at 15.) Hanley argues that the conduct which gave rise to Codrington's intentional infliction of emotional distress claim against him was his discipline of her, including the memoranda critical of her job performance.[4] (*See id.* at 13-15.) Hanley states that he was authorized to engage in such conduct as the supervisor of maintenance and that it would be fair to require VIPA to reimburse him for the expenses incurred in performing his job. (*See id.*)

Section 438, entitled "Duty of Indemnity; The Principle," gives a broad overview of the law of indemnity, while section 439 clarifies precisely "When a Duty of Indemnity Exists." To obtain indemnification pursuant to section 439(d), the potential indemnitee must prove the following: (1) he was sued "because of [his] authorized

---

[4]Codrington's complaint contained the following allegations with regard to Hanley's alleged retaliation against her:

Defendant Hanley began complaining about the quality of Plaintiff's work. He would rarely speak to her making it difficult for Plaintiff to carry out her duties; Defendant tried several times to carry Plaintiff without pay; after Hurricane Hugo, while other employees were given flexible work hours to handle post hurricane needs, Plaintiff was denied the same privilege and was required to be on the job at all times; Defendant Hanley kept Plaintiff ill-informed where she needed to have information; he tried to provoke her to anger an mistakes on the job; he sabotaged her attempts at doing her job by changing procedures she had followed in the past without informing her of the changes; he removed memoranda that he had requested her to type, and Defendant Hanley also requested her dismissal.

(App. at 100.)

conduct;" (2) the suit was unfounded; and (3) the suit was not brought in bad faith. It is generally determined at trial whether a defendant was sued because of his authorized conduct and whether the lawsuit was unfounded. Therefore, where a case is resolved through trial and a subsequent action for indemnification of attorney's fees ensues, the court resolving the latter action looks to the final resolution reached in the underlying case, not just to the original complaint, to determine whether the underlying lawsuit was brought because of the defendant's authorized conduct and whether it was unfounded. *See DeLoach v. Companhia de Navegacao Lloyd Brasileiro*, 1986 U.S. Dist. LEXIS 15782, Civ. A. No. 84-947, 1986 WL 15015, at *2 (E.D. Pa. Dec. 31, 1986). Where the underlying lawsuit is settled before trial, however, such questions remain unanswered. It therefore becomes the responsibility of the court handling the indemnification suit to resolve them either through trial or on a motion for summary judgment; the complaint does not control. *See, e.g., Sheely v. Mower County Farmers Mut. Ins. Co.*, 1996 Minn. App. LEXIS 1069, No. CO-96-434, 1996 WL 509759, at *1 (Minn. App. Sept. 4, 1996) (stating that after underlying lawsuit settled, trial court held bench trial in indemnification action to determine whether underlying lawsuit was unfounded).

Hanley claims that Codrington sued him because of his authorized conduct — specifically, his discipline of Codrington. The trial court concluded — without considering this disciplinary action — that the only basis for Codrington's suit against Hanley was the physical acts of sexual harassment that he allegedly committed.[5] It appears from Codrington's complaint that she sued Hanley "be-

---

[5] Codrington alleges in her complaint that Hanley did as follows:

(a) subjected Plaintiff to repeated unwelcome physical conduct of a sexual nature including but not limited to uninvited touching and caressing of Plaintiff, forcibly trying to kiss Plaintiff and fondle her in Defendant, Hanley's office, suggestive comments and pleadings of a sexual nature, uninvited visits to Plaintiff's home, harassing phone calls to Plaintiff's home, creating public spectacles to lead others to believe they were having an affair;

(b) subjected Plaintiff to persistent unwanted and often immoral, sexual advances, sexual questions and requests for sexual favors, including but not limited to the following specific conduct: calling Plaintiff into Defendant, Hanley's office and telling her the two of them could make it without other V.I.P.A. employees knowing about it, pleading with Plaintiff to have an affair with him, asking Plaintiff to visit him after office hours, telling Plaintiff on a daily basis that she was going to be his woman, telling plaintiff that he will divorce his wife to marry Plaintiff;

cause of" two types of alleged conduct: (1) Hanley's retaliatory actions, which include his drafting of critical memoranda, his treating her differently than other employees, his sabotaging her efforts to adequately perform her job, and his requesting her dismissal; and (2) Hanley's physical acts of sexual harassment.

With regard to the first type of alleged conduct, it appears possible that Hanley's actions were authorized by VIPA. Several of the memoranda criticizing Codrington were written on VIPA letterhead to Hanley's superior, James Boschulte, Director of Engineering. (*See* App. at 22, 23, 25.) Others were written by Hanley directly to Codrington on VIPA letterhead. (*See id.* at 26, 27.) As Codrington's superior, it is possible that Hanley was authorized to address Codrington's actions in this manner.

■ With regard to the second type of alleged conduct — i.e., Hanley's physical acts of sexual harassment — Hanley has failed to provide any evidence that Codrington made these allegations against him "because of [his] authorized conduct" as required by section 439(d). Hanley admitted in his deposition that he and Codrington engaged in sexual relations during her employment. (See App. at 129, 142.) He also admitted to kissing her in his truck in view of another VIPA employee. (*See id.* at 140-42.) It is this type of sexual conduct about which Codrington takes issue in her complaint. Whether Hanley specifically engaged in the conduct described in Codrington's complaint or some variation of it, the conduct was not authorized by VIPA. Therefore, VIPA cannot be required to indemnify Hanley for the expenses incurred in defending this aspect of Codrington's lawsuit, whether or not Codrington's allegations of this type of sexual harassment were unfounded.

■ While VIPA cannot be required to indemnify Hanley for the costs incurred in defending against Codrington's claims of physical sexual harassment, VIPA could be required to do so for the costs incurred in defending against Codrington's retaliation claims, if

---

telling Plaintiff that he will not give up pursuing her, that a kick from the mare does the pony no harm and the hotter the battle the sweeter the victory.

(App. at 98.)

Hanley proves that his allegedly retaliatory conduct was in fact authorized. The trial court did not even consider this conduct when it concluded that Hanley acted outside the scope of his authority when committing those acts which formed the basis of Codrington's suit. Because a genuine issue of material fact exists regarding Hanley's authority to commit the allegedly retaliatory acts, the Court will remand this case to the trial court so that it may determine whether Codrington's suit was in any part predicated on acts which Hanley was authorized to commit.

If the trial court finds that Hanley was authorized to commit some of the retaliatory acts which provided a basis for the underlying suit, the trial court will then determine whether Codrington's allegations of intentional infliction of emotional distress resulting from Hanley's retaliatory actions were unfounded and whether they were brought in good faith.[6] The evidence which was presented to the trial court does not resolve the matter.[7]

When determining whether VIPA must indemnify Hanley for defending against Codrington's allegations regarding Hanley's allegedly retaliatory conduct, the trial court should refer not only to Restatement (Second) Agency § 439(d) — which specifically addresses indemnification by an employer of an employee for expenses incurred in defending actions brought by third persons

---

[6] In addressing the summary judgment motions filed in the underlying action, the trial division of this Court found that a reasonable trier of fact could conclude that Codrington suffered severe emotional distress due to Hanley's actions. *See Codrington*, 911 F. Supp. at 918. While the District Court did not address Codrington's allegations of retaliation in reaching this conclusion, it did not dismiss them as unfounded. *See id.*

[7] Hanley refers to the negative memoranda that he drafted regarding Codrington's job performance as his primary evidence that Codrington sued him for engaging in conduct authorized by VIPA. While these memoranda may have been authorized, there is some circumstantial evidence which suggests that Codrington's allegations regarding them were valid. The VIPA held a hearing on May 16, 1990, concerning Codrington's sexual harassment claim at which Codrington and Hanley were both present. The memoranda in which Hanley disparaged Codrington's work are dated May 23, 1990, February 13, 1990 (Revised May 30, 1990), June 19, 1990, June 20, 1990, and August 14, 1990. (*See* App. at 22-23, 25-27.) Hanley claimed in his deposition that Codrington began to act inappropriately at work after Hanley ended their relationship in response to allegations that Codrington had stolen $11.00 in voucher money from VIPA. (*See id.* at 143.) The alleged theft, however, occurred in 1987, while the negative memoranda were not drafted until 1990. (*See id.* at 29.) While this sequence of events is circumstantial evidence that Codrington's allegations regarding Hanley's critical memoranda were valid, a reasonable trier of fact could still conclude otherwise.

227

— but also to Restatement (Second) Agency § 438 — which generally addresses those instances where indemnification is appropriate. The trial court should allow the equitable considerations which are a part of § 438 to inform its decision. *See* Restatement (Second) Agency § 438(2) ("In the absence of terms to the contrary in the agreement of employment, a principal has a duty to indemnify the agent where the agent (a) makes a payment authorized or made necessary in executing the principal's affairs, or (b) suffers a loss which, because of their relation, it is fair that the principal should bear.")

### D. Hearsay

■ Hanley objects to the trial court's consideration of a document VIPA submitted with its summary judgment motion, specifically, the record from the January 31, 1992 Disciplinary Action Hearing held to address Codrington's sexual harassment claim against Hanley. (*See* App. at 154-72.) As VIPA points out in its brief, there is no evidence that the trial court relied on the hearing record in reaching its decision. (*See* Appellee's Br. at 18, n.25; App. at 344-48.) Therefore, this document does not create grounds to vacate the lower court's decision.

### E. Sanctions

■ VIPA argues in its brief that it is entitled to sanctions pursuant to Fed. R. App. P. 38 which provides as follows:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

The Advisory Committee Notes to this rule stress the importance of notifying the party against which sanctions are sought and giving that party an opportunity to respond:

> A separately filed motion requesting sanctions constitutes notice. A statement inserted in a party's brief that the party moves for sanctions is not sufficient notice. Requests in briefs for sanctions have become so commonplace that it is unrealistic to expect careful responses to

such requests without indication that the court is actually contemplating such measures. Only a motion, the purpose of which is to request sanctions, is sufficient.

Fed. R. App. P. 38, Advisory Comm. Notes, 1994 Amends. VIPA has not made such a motion.

## III. CONCLUSION

For the foregoing reasons, the Court will vacate the trial court's grant of summary judgment to VIPA and affirm the trial court's denial of summary judgment to Hanley. The Court will remand this case for proceedings consistent with this opinion, specifically for a determination of whether VIPA must indemnify Hanley for the attorney's fees and costs incurred in defending against Codrington's intentional infliction of emotional distress allegations which were predicated on Hanley's allegedly retaliatory acts.

The Court will decline to vacate the trial court's opinion and order due to VIPA's submission of an allegedly hearsay document to the trial court along with its summary judgment motion. The Court will deny VIPA's motion for sanctions.

An appropriate order will be entered.

## ORDER

PER CURIAM

AND NOW, this 7th day of July, 1999, having considered the arguments and submissions of the parties; and for the reasons set forth in the Court's accompanying Opinion of this date; it is hereby

ORDERED that the Territorial Court's February 27, 1998 decision to grant the summary judgment motion of defendant Virgin Islands Port Authority is VACATED; and further

ORDERED that the Territorial Court's February 27, 1998 decision to deny the summary judgment motion of plaintiff Wendell Hanley is AFFIRMED; and finally

ORDERED that this case be REMANDED for further proceedings consistent herewith.