**SHIRLEY L. SMITH, Plaintiff**
**v.**
**VIRGIN ISLANDS PORT AUTHORITY, VIRGIN ISLANDS PORT**
**AUTHORITY GOVERNING BOARD, GORDON A. FINCH, DAVID**
**MAPP, DARLAN BRIN, Defendants**
**SMITH v. VIRGIN ISLANDS PORT AUTHORITY**
Civ. No. 2002-227

District Court of the Virgin Islands

Division of St. Thomas and St. John

January 2, 2005

467

468

SHIRLEY L. SMITH, *Pro Se*, St. Thomas, U.S.V.I., *For the plaintiff.*

MICHAEL J. SANFORD, ESQ., St. Thomas, U.S.V.I., *For the defendants.*

MOORE, *District Judge*

## MEMORANDUM

(January 2, 2005)

The defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explained below, I find that, of the nine counts alleged in her amended complaint, the plaintiff has alleged facts sufficient to support a cause of action against the Virgin Islands Port Authority ["VIPA"] for breach of contract, constructive discharge, violation of Title VII of the Civil Rights Act of 1964, violation of section 531 of Title III of the Virgin Islands Code, and violation of the Family Medical Leave Act. The plaintiff has also sufficiently alleged that all of the defendants violated her procedural due process rights. For reasons also explained below, I will dismiss all other claims against VIPA and the individual defendants. I will therefore grant in part and deny in part the defendants' motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*Pro se* plaintiff Shirley Smith has filed a twenty-nine page complaint that levies a wide range of charges against the defendants, including nine specified counts that allege, among other claims, breach of contract, unfair labor practices, invasion of privacy, wrongful suspension, civil conspiracy, violation of the Fourteenth Amendment of the United States Constitution, hostile work environment, intentional discrimination, violation of the *Americans with Disabilities Act,* intentional infliction of extreme emotional distress, and constructive discharge.

Sometime in March or April of 1999, Smith interviewed for the position of public information officer for VIPA. (Am. Compl ¶¶ 16-17.) Apparently, during her interview for the position with defendant Gordon

469

A. Finch, Smith informed him that she had lost her voice in 1996 due to a rare disorder but had made a miraculous recovery. (*Id.* ¶¶ 18-19.) Finch allegedly asked several other questions about Smith's health. Smith was hired and began her tenure as VIPA's public information officer on April 12, 1999. (*Id.* ¶ 8.)

Smith alleges that she began experiencing difficulties soon after joining VIPA. She complains that her assistant was inadequate, which required her to take on a heavier work load. (*Id.* ¶ 21.) Smith also alleges that "since the commencement of my employment, I have had to endure constant provocation, harassment, including sexual harassment ... ." (*Id.* ¶ 10.) After allegedly enduring several months of this constant sexual harassment, sometime in June of 1999 the plaintiff reported to Finch that she was sexually harassed by former VIPA board members Sidney Lee and Hector Peguero. (*Id.* ¶¶ 30, 61.) Smith complains that Finch and other officials failed to follow proper procedures in responding to her allegations. (*Id.* ¶ 30.) The stress of her work environment allegedly caused her to suffer a relapse of her rare disorder, resulting in her once again losing her voice. This relapse prevented her from working from approximately December 2000 until April 23, 2001. (*Id.* ¶ 73.) When she returned to work, she claims she was not told of important meetings, she was asked to take a drug test, and that her duties had been reassigned to other staff members.

On May 15, 2001, Smith's working environment allegedly took a turn for the worse when she claims she was physically attacked by Barbara Donastorg, another employee at VIPA. (*Id.* at ¶¶ 41-43.) Smith claims that this attack was orchestrated by certain unspecified staff members who were participating in a "civil conspiracy" to provoke her. (*Id.* ¶ 46.) The next day, Smith was informed that she had to attend an administrative hearing on May 17, 2001 before VIPA Assistant Executive Director David Mapp and other VIPA officials, presumably to address her conduct in the altercation. Smith attended the hearing with attorney Robert Leycock, whom she claims was standing in for her regular attorney, Arturo Watlington. (*Id.* ¶¶ 52-53.) At the start of the hearing, Mapp denied Leycock's request to continue the hearing to allow Watlington to attend. Smith responded by immediately leaving the meeting. The meeting continued in Smith's absence, and at its completion, a letter from Mapp was delivered to Smith informing her

that she was suspended for thirty days for insubordination and refusal to attend the meeting. (*Id.* ¶ 56.)

On May 21, 2001, Smith filed an appeal with what she calls the VIPA Governing Board ["VIPA Board"]. (*Id.* ¶ 59.) Smith alleges she was instead granted a hearing on June 7, 2001 before the Personnel Committee. Smith claims that several members of this committee were biased against her, including Hector Pequero and Don Mills. The Personnel Committee elected to uphold Smith's suspension.

Following the completion of her thirty-day suspension, Smith returned to work at VIPA on June 22, 2001. (*Id.* ¶ 62.) On June 25, 2001, Finch held a second administrative meeting. (*Id.*) It is unclear from the amended complaint what happened at this meeting. Smith alleges that on June 29, 2001, Finch informed her that she would have to take an anger management course or be subjected to another thirty day suspension without pay. (*Id.* ¶ 64.) Smith chose the suspension. The VIPA Governing Board voted on July 18, 2001 to uphold the second suspension. (*Id.* ¶ 66.)

In the meantime, Smith allegedly suffered another relapse of her rare disorder and once again lost her voice. She took sick leave on July 18, 2001 and, when her sickness continued, applied for donated sick leave on August 27, 2001. (*Id.* ¶ 75.) Two days later, Finch denied Smith's application for sick leave, allegedly in part because he did not consider Smith's medical condition serious. (*Id.* ¶ 76.) On October 8, 2001, Smith renewed her effort to obtain donated leave by submitting to Finch a letter from Dr. Ira Buchalter allegedly stating that she had a serious medical condition. (Am. Compl. ¶ 82.) Apparently, VIPA did not request a second opinion after receiving Buchalter's letter.

On November 6, 2001, Smith applied for leave under the Family and Medical Leave Act ["FMLA"]. The VIPA Board allegedly denied this application on November 30, 2001, according to Smith, by "stating once again, that there was no evidence that I was suffering from a serious medical condition, despite Dr. Buchalter's letter of October 8, 2001." (*Id.* ¶ 86.) Smith nevertheless continued to request FMLA leave from VIPA, and, as alleged in the amended complaint, the VIPA reversed course by granting her FMLA leave on January 16, 2002. (*Id.* ¶ 91.) The plaintiff also alleges she was granted unpaid leave after the VIPA Board initially denied her FMLA leave request. (*Id.* ¶ 89.) The amended complaint does

471

not specify the duration and precise timing of the FMLA leave or the unpaid leave.

Presumably in the midst of Smith's lengthy leave of absence due to her alleged medical condition, VIPA ordered her to return to work on June 3, 2002. (*Id.* ¶ 94.) A month after returning to work, Smith requested that an instructor come to VIPA to teach sign language classes to aid Smith in communicating with her co-workers. (*Id.* ¶ 95.) She asserts that VIPA denied this and other proposed efforts to accommodate her illness.

Meanwhile, Smith's strained relationship with VIPA compelled her to resort to legal means to address her grievances with her employer. According to her amended complaint, Smith filed a formal discrimination charge against VIPA with the United States Equal Employment Opportunity Commission on January 15, 2002. (*Id.* ¶ 111.) She received a right to sue letter on September 26, 2002, and filed her initial complaint in this Court on December 19, 2002. Soon thereafter, Smith's problematic employment at VIPA came to an end when she resigned her position on January 24, 2003, claiming that she feared her continued employment would be detrimental to her physical and emotional health. (*Id.* ¶ 110.)

## II. STANDARD OF REVIEW

The defendants have filed their motions to dismiss Smith's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In determining a Rule 12(b)(6) motion to dismiss, "the material allegations of the complaint are taken as admitted," and the Court must liberally construe the complaint in plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 422, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969) (citing FED. R. CIV. P. 8(f)). All reasonable inferences are drawn in favor of the plaintiff. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). Further, the Court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claim.

*Conley*, 355 U.S. at 47. "[A]ll the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

■ Because the plaintiff in this matter is *pro se*, the allegations of her complaint are generally held to a less stringent standard than formal pleadings prepared by a lawyer. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)). Nevertheless, even *pro se* litigants must comply with minimal standards of notice pleading required by Rule 8(a) of the Federal Rules of Civil Procedure. *See, e.g., Moll v. Carter*, 179 F.R.D. 609 (D. Kan. 1998) (dismissing vague *pro se* complaint for failure to satisfy Rule 8(a)). Moreover, "conclusory allegations or conclusions of law masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

## III. ANALYSIS

The amended complaint states nine separate counts, some of which allege multiple causes of action, often with little or no reference to legal authority. I review each count individually below.

### A. Count I States a Valid Claim for Beach of Contract, But Fails to State a Claim For Unfair Labor Practices or Invasion of Privacy

Count I of Smith's amended complaint alleges breach of contract, unfair labor practices, and invasion of privacy. I will address each of these three allegations individually.

#### 1. Breach of contract

■ Count I of the amended complaint alleges breach of contract. To the extent I can understand the allegations in Count I, I interpret them as alleging that the defendants violated section 2.02(a) of VIPA's Personnel Rules and Regulations. It is well established that internal personnel rules can be construed as an implied contract, if there is evidence that the employer intended to be bound by the requirements set forth in those rules. *See, e.g., Petersen v. First Fed. Sav. and Loan Ass'n of Puerto Rico*, 617 F. Supp. 1039, 1042, 21 V.I. 429 (1985). Thus, I find that Smith has satisfied the minimum pleading requirements necessary to

473

state a cause of action for beach of contract against VIPA. Even if VIPA's internal regulations constituted a binding contract, however, violation of these regulations would not impose liability on the individual defendants. I will therefore allow the plaintiff's breach of contract claim to proceed against VIPA, and dismiss it against these individuals with prejudice.

## 2. Unfair labor practices

 Count I also contains the phrase "unfair labor practices," without any specification regarding what acts constituted these unfair practices or which individuals committed the transgressions. Moreover, the plaintiff has provided no reference to legal authority that would assist me in deciphering her claim. Without such guidance, I can only assume that the plaintiff is alleging unfair labor practices in violation of the National Labor Relations Act ["NLRA"], 29 U.S.C. § 151 *et seq.* The NLRA states that is an unfair labor practice for an employer to interfere with employees efforts to bargain collectively, to interfere with the formation of a labor organization, to discriminate in hiring due to membership in a labor organization, to discharge or discriminate against an employee because she has provided testimony as allowed under the Act, or to refuse to bargain collectively with employee representatives. *See* 29 U.S.C. § 158. As the plaintiff alleges no facts that would support a claim under the NLRA against either VIPA or the individual defendants, I will dismiss her unfair labor practices claim in its entirety with prejudice.

## 3. Invasion of Privacy

Smith also alleges in Count I that VIPA invaded her privacy. The Restatement (Second) of Torts provides the following standard for establishing an invasion of privacy claim:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

RESTATEMENT (SECOND) OF TORTS § 652D. Comment a to section 652D further explains, in relevant part:

[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section.

█ Smith complains of numerous invasions of privacy in her complaint, including questions asked during her interview process regarding her medical records, her degrees and references, and her mental health. Smith does not allege, however, that any of the information she provided during the interview and pre-interview process was ever made public to a sufficiently large audience. She alleges in paragraph twenty-four of the amended complaint that, when the VIPA Board denied her a raise and promotion, Finch and his secretary publicized the decision to the staff. Even if true, this allegation would not amount to an invasion of privacy by any of the defendants, as the fact was communicated to a small group of persons. Accordingly, I will dismiss Smith's invasion of privacy claim with prejudice.

## B. Count II Fails To State Any Legally Cognizable Claim

█ Count II alleges "wrongful suspension, civil conspiracy, and 14th Amendment Violations." I find it impossible to construe the plaintiff's complaint to support any cause of action related to these generalized claims. The claims "civil conspiracy" and "wrongful suspension" are meaningless without more specific reference to legal authority and will be dismissed. I assume the plaintiff's reference to "14th Amendment Violations" is an effort to allege she was denied due process before her suspensions were imposed. As explained below, I construe Count V as alleging that VIPA failed to follow certain statutory procedures in suspending the plaintiff and thereby denied her due process of law. Therefore, I will analyze whether the plaintiff has any viable due process claim in Count V and will dismiss Count II's Fourteenth Amendment claim with prejudice as duplicative.

## C. The Allegation of "Hostile Work Environment" in Count III, Combined With the Various Allegations of Sexual Harassment, State a Cause of Action Under Title VII

■ Count III of the amended complaint states the phrase "hostile work environment," again without any legal authority cited. The plaintiff has alleged in her amended complaint that she suffered from constant sexual harassment by VIPA employees and board members since the commencement of her employment. (Am. Compl. at ¶ 10; *see also id.* at ¶ 30, 32, 61.) Viewing this *pro se* plaintiff's complaint in the best possible light, I construe these claims of sexual harassment and hostile work environment as an allegation that VIPA has violated Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, §§ 701-716, 78 Stat. 241, 253-66 (codified as amended at 42 U.S.C. §§ 2000e *et seq.* ["Title VII"]. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1).

The Supreme Court has held that Title VII supports a cause of action where sexual harassment was so pervasive that it had the effect of creating a hostile work environment and of altering the conditions of employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986). In order to establish a hostile work environment sexual harassment claim, the plaintiff must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). Giving the plaintiff all possible benefit of the doubt as I must for the purposes of this motion to dismiss, I find that her amended complaint sufficiently states a claim for hostile work environment sexual harassment under Title VII against VIPA.[1] Accordingly, I will deny the VIPA's motion to dismiss Count III.

---

[1] The defendants argue briefly that the plaintiff's sexual harassment claims "are time barred since they were not filed within the 300-day limitation period," without any reference or citation to legal authority regarding this time limitation. (Defs.' Mot. To Dismiss at 7-8.) I presume the defendants' unexplained statement is an attempt to argue

I will, however, dismiss this count against the individual defendants, as Title VII does not provide for individual liability. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996).

### D. Count IV is Duplicative of Count I's Breach of Contract Claim and Therefore Must Be Dismissed

█ Count IV vaguely alleges "retaliation and intentional discrimination," again with no federal or local statute cited. Paragraphs twenty-eight and twenty-nine of the amended complaint, however, shed some light on the factual circumstances that the plaintiff believes supports these allegations:

> 28. My salary is and has always been lower than other managers in similarly situated positions, even though I have more credentials than some managers. I am a member of VIPA's executive staff, and I manage the Public Relations Office. Yet, the board passed a new management pay plan in November 2002, which continues to place me in a lower classification than other executive staff managers.

> 29. This was another <u>blatant act of discrimination and retaliation</u>. VIPA's Personnel Rules and Regulations, Section 2.02(A) states that the pay plan "shall include ... minimum standards and qualification for each class," however, there was no criteria used to develop the plan. I was arbitrarily placed in a lower classification. No regard was given to my credentials, position, responsibilities or years of service.

---

that the plaintiff failed to comply with 42 USC § 2000e-5, requiring her to file a claim with the EEOC within 300 days of the last action giving rise to a hostile work environment claim. This argument fails, as the plaintiff has alleged she was subject to "constant" sexual harassment since the commencement of her employment. (Am. Compl. at ¶ 10.) Again, as I am required to view this *pro se* plaintiff's complaint in the best possible light, I construe her allegation of "constant" sexual harassment as meaning she was subject to sexual harassment throughout her entire employment at VIPA, which would include instances of such harassment within 300 days of the filing of her EEOC claim on January 15, 2002. *See AMTRAK v. Morgan*, 536 U.S. 101, 110, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002) (stating "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"). I also note that the plaintiff filed this lawsuit on December 19, 2002, within the 90 days she had to file the lawsuit after receiving a right to sue letter from the EEOC on September 26, 2002.

(Am. Compl. at 8-9 (emphasis added).) These paragraphs show the plaintiff's allegations of discrimination and retaliation relate to VIPA's adoption of a pay plan that did not assign her position the income she feels she deserved. They also show the plaintiff believes VIPA did not adhere to its own internal procedures. I find that these claims do not state a legal cause of action, aside from a potential breach of contract claim based on VIPA's failure to follow its internal personnel rules. Accordingly, if Count IV states any legal claim at all, it is duplicative of Count I's breach of contract claim and must be dismissed with prejudice.

## E. Count V Alleges A Cause of Action Under 3 V.I.C. § 531 and A Due Process Violation; All Other Claims In Count V Will Be Dismissed

Count V states simply "violation of Title 3 of the Virgin Islands Code," without identifying any specific section of that Title. At other points of her amended complaint, however, Smith refers specifically to sections 530 through 534 and 583 of Title III.[2] (Am. Compl. at 5, 17.) Of these sections, only 530, 531, and 583 are relevant to the facts alleged in the plaintiff's amended complaint.[3] Again interpreting the amended complaint in the best possible light, I will separately analyze the potential statutory and constitutional claims[4] that are raised by the plaintiff's vague reference to the aforementioned sections of Title 3. For the reasons explained below, I find that the only viable claim alleged in Count V is the plaintiff's allegation that VIPA violated section 531 in suspending her for non-merit reasons. All other allegations in Count V will be dismissed.

---

[2] The plaintiff actually refers on page 17 of her amended complaint to "Section 530-9" of Title III. As section 530 does not have a subpart (9), and as sections 535-39 do not exist, I interpret this reference as a citation of section 530-35 of Title III.

[3] Sections 532, 533, and 534, relate to, respectively, dismissal without prejudice, prohibition against employment of certain individuals, and transfer of employees to other districts.

[4] As noted above in my analysis of Count II, the plaintiff makes a vague reference to "14th Amendment violations" in her amended complaint. As I interpret this as a due process claim, it is appropriate to analyze this due process claim here in conjunction with the plaintiff's claims that she was denied certain process afforded to her by the Virgin Islands Code.

## 1. The statutory claims

### i. section 530

Section 530 establishes certain procedures that VIPA's executive director must follow when dismissing or suspending "regular employees" for cause. That section, however, is only one of many sections that make up the Virgin Islands Personnel Merit System. *See* 3 V.I.C. §§ 451-690. Thus, to fully comprehend the requirements of section 530, I must interpret it in context with its accompanying statutes. In particular, section 451a provides three pieces of information relevant to my analysis of section 530. First, section 451a divides all positions in the government service into two categories, namely, career service and exempt service. Second, section 451a notes that the term "career service" is synonymous with the term "classified service" and that the term "exempt service" is synonymous with "career service." In other words, the Virgin Islands Legislature has specified two terms for each category of employment established in section 451a; career or classified service for the higher employment category and exempt or unclassified service for the lower employment category.[5] Finally, section 451a states that VIPA employees such as the plaintiff describes herself are classified as exempt service.

From her allegations, I conclude that the plaintiff served in a exempt position while employed at VIPA, and can now properly interpret the relevancy of section 530 to the plaintiff's allegations. That section states in pertinent part:

> Where a department head, including the Executive Directors [sic.] of ... the Virgin Islands Port Authority, ... decides to dismiss, demote, or suspend a regular employee of ... the Virgin Islands Port Authority ... for cause, he shall furnish the employee with a written statement of the charges against him. The employee shall have ten

---

[5] Before 1968, the Virgin Island Code only used the terms "classified service" and "exempt service" to signify the two categories of employees under the territory's Personnel Merit System. In 1968, however, the Virgin Islands Legislature revised certain statutes relating to the Personnel Merit System, replacing the term "classified service" with "career service" and "unclassified service" with "exempt service." *See* Act No. 2311, 1968 V.I. Sess. Laws 271. Unfortunately, the Legislature did not apply this reference to all statutes relating to the Personnel Merit System. Thus the Code confusingly uses both the old and new terminology. The old and new terms, however, can be used interchangeably. 3 V.I.C. § 451a(d).

days following the date of receipt of said statement of the charges to appeal the proposed action to the Public Employees Relations Board.

3 V.I.C. § 530 (emphasis added). The Virgin Islands Code defines the term "regular employee" as meaning "an employee who has been appointed to a position in the classified service ... ." 3 V.I.C. § 451. Thus, the plaintiff was not a "regular employee" because she served in the exempt or unclassified service and was not appointed to a position in the classified or career service. As she was not a "regular employee," the plaintiff was not afforded the procedural protections set forth in section 530, and her claim under this section will be dismissed with prejudice.

### ii. section 531

Section 531 prohibits discrimination in hiring or promoting employees on non-merit grounds, including race, religion, and national origin. This section applies equally to all government employees, regardless of their classification. *See, e.g., Schuster v. Thraen*, 18 V.I. 287, 295 (1981) (noting that a probational employee has right to notice and to be heard under section 531 if he asserts his dismissal was based on non-merit factors). Assuming for purposes of this motion to dismiss that all the facts alleged in the plaintiff's amended complaint are true, she has sufficiently alleged that she was suspended for non-merit reasons. Accordingly, her claim that VIPA violated section 531 may survive this motion to dismiss. I will, however, dismiss this claim against the individual defendants, as there is no basis for imposing civil liability on individuals under section 531.

### iii. section 583

Section 583, subpart (a), states that "all officers and employees of the Government of the United States Virgin Islands, regardless of tenure are entitled to sick leave which accrues at the rate of one-half day for each full biweekly pay period." Subpart (c) of section 583 states that a commissioner or agency head "may" advance up to thirty days of sick leave to an individual with a "serious disability or ailment." As far as I can comprehend the plaintiff's amended complaint, it appears that she was granted all the sick leave to which she was entitled under section 583(a). To the extent she is complaining that she did not receive a thirty

day advance as allowed by subpart (c), her claim has no merit as the granting of such an advance is committed to the VIPA's discretion.

## 2. The constitutional claims

As noted above, the plaintiff vaguely referres to "14th Amendment Violations" in Count II of her amended complaint. I interpret this reference that the VIPA denied her due process in suspending her from her service as a VIPA employee. The Constitution does not create property interests, but protects established entitlements. *See Leis v. Flynt*, 439 U.S. 438, 441, 58 L. Ed. 2d 717, 99 S. Ct. 698 (1978). An individual who is dismissed or suspended from public employment must make two showings to establish that the dismissal violated due process: (1) that the dismissal deprived her of a property or liberty interest, and (2) that the employer did not afford her adequate procedural protections in connection with the action. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-41, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); *Richardson v. Felix*, 856 F.2d 505, 507 (3d Cir. 1988).

In considering whether the plaintiff's position at VIPA afforded her a property interest in her continued employment, I again look to 3 V.I.C. §§ 451a, 530. As explained above, the plaintiff was employed in an exempt service position. While it is well established that a regular government employee has a property interest in her continued employment, it is much less clear how much, if any, property interest an exempt employee has in his government employment. *Compare Felix*, 856 F.2d at 509 (holding that regular government employees have a property interest in continued employment) *with Schuster*, 18 V.I. at 297-98 (taking no position whether probational governmental employees have property interest in employment, but finding due process was satisfied if such property interest exists).

Assuming for now that the plaintiff had a property interest in her continued employment as an exempt employee, I find it is too early to determine whether the defendants provided her adequate process to protect this property interest. Whether the defendants accorded the plaintiff procedural due process involves questions of fact that have not been established at this stage of the litigation. For example, even taking the plaintiffs' allegations as true, I cannot determine precisely what procedures were followed in conjunction with the plaintiff's suspension and whether any property interest the plaintiff may have held was

adequately protected. I will therefore deny the defendants' motion to dismiss the plaintiff's due process claim alleged in Count V.

## F. The Government of the Virgin Islands is an Instrumentality of the United States Therefore Exempt From Compliance with Title I of the ADA, Thus Count VI Must Be Dismissed

Count VI alleges that VIPA violated Title I of the Americans With Disabilities Act ["ADA"] by asking her questions during her interview process about her mental and physical health. Title I of the ADA prohibits employment in discrimination, stating that "no covered entity" shall discriminate against a qualified individual because of his or her disability. 42 U.S.C. § 12112(a). The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). It further defines "employer" as meaning, in relevant part, "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A). Critical for this analysis, however, is that section 12111(5)(B)(i) of the Act broadly exempts the federal government and its various subdivisions from compliance with Title I of the ADA. Section 12111(5) (B) (i) states that the term "employer" does not include "the United States, a corporation wholly owned by the government of the United States, or an Indian tribe."

The individual defendants correctly argue that I must dismiss any ADA claim against them because they do not qualify under the Act's definition of employer and the Act does not otherwise impose individual liability. *See United States E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir. 1995) (holding that individuals who do not otherwise meet the statutory definition of "employer" cannot be liable under the ADA). I will therefore dismiss Count VI to the extent the plaintiff intended it to apply to the individual defendants.

Although neither party has addressed this issue, I must also consider whether VIPA falls under the ADA's definition of "employer." In making this determination, I focus on two questions. First, whether VIPA is part of the Government of the Virgin Islands. Second, if VIPA is a component of the Government of the Virgin Islands, whether it is thereby also part of the United States and exempt from the ADA.

## 1. VIPA is a component of the Government of the Virgin Islands

In answering the first question, I look first to the Virgin Islands Code, which codifies the legislative act that established VIPA as a public corporation. *See* 29 V.I.C. §§ 531-82. As explained therein, VIPA is an "autonomous governmental instrumentality for the Government of the United States Virgin Islands," to which the Legislature has granted power "for public uses and purposes and are proper governmental functions. ..." *Id.* at §§ 541(a), 531(a).[6] In addition to the Virgin Islands Code, decisions of this Court make clear that VIPA is a part of the Virgin Islands Government. For example, I have recognized VIPA's position as a component of the local government by prohibiting punitive damage awards against VIPA, as such an award would be tantamount to assessing damages against the public. *See Codrington v. Virgin Islands Port Auth.*, 911 F. Supp. 907, 912-13, 33 V.I. 215, 33 V.I. 245 (1996). Also persuasive is my characterization of a similar public corporation, namely, the Virgin Islands Water and Power Authority, as the "alter ego" of the Government of the Virgin Islands.[7] *Eddy v. Virgin Islands Water and Power Auth.*, 955 F. Supp. 468, 477, 35 V.I. 441 (1997). As VIPA is part of the Government of the Virgin Islands, I will treat it no differently than any other agency or department of the local government in determining whether VIPA qualifies as an "employer" for purpose of the ADA.

---

[6] Section 531 provides in full:

(a) The powers conferred by this chapter are for public uses and purposes and are proper governmental functions for which public money may be expended, private property may be acquired, by eminent domain or otherwise, property may be exchanged, leased, mortgaged, assigned, sublet, or sold, and bonds or other obligations may be issued pursuant to section 8(b) of the Revised Organic Act of the Virgin Islands, as amended, or any other such authority as may hereafter be conferred by Federal Law, or by the laws of the United States Virgin Islands.

(b) The provisions enacted in this chapter are hereby declared to be necessary in the public interest, and the facilities herein authorized are declared to be public improvements and public undertakings.

[7] As the "alter ego" of the Virgin Islands Government, this Court concluded that the local Water and Power Authority, like the rest of the territorial government, was not a "person" subject to suit under 42 U.S.C. § 1983.

## 2. The Government of the Virgin Islands, and its component, is an instrumentality of the United States

I next consider whether, as part of the governmental structure of the Virgin Islands, VIPA is a federal instrumentality exempted from the requirements of Title I of the ADA. As noted above, the ADA exempts from Title I's requirements "the United States, a corporation wholly owned by the government of the United States, or an Indian tribe." 42 U.S.C. § 12111(5)(B)(i). Congress did not define the term "United States," and the ADA does not give explicit guidance for determining whether an unincorporated territory's government should be considered to be part of the United States for purposes of compliance with Title I of the ADA.[8]

Even without such explicit guidance, however, I conclude that the Government of the Virgin Islands is included within the exemption as a part of the United States. The United States Supreme Court has made clear that the federal government, through the Congress, maintains unfettered control over unincorporated territories:

> Until Congress shall see fit to incorporate territory ceded by treaty into the United States ... the territory is to be governed under the power existing in Congress to make laws for such territories, and subject to such constitutional restrictions upon the powers of that body as are applicable to the situation.

*Dorr v. United States*, 195 U.S. 138, 143, 49 L. Ed. 128, 24 S. Ct. 808 (1904); *see also Binns v. United States*, 194 U.S. 486, 491-92, 48 L. Ed. 1087, 24 S. Ct. 816, 2 Alaska Fed. 291 (1904) (noting that Congress has plenary power to establish governments in the territories and "the form of government it shall establish is not prescribed, and may not

---

[8] Although a few courts have considered Title I ADA claims against territorial governments, I found no case discussing whether territorial governments fall within the ADA's exemption for the federal government. *See, e.g., Vega v. Gov't of the Virgin Islands*, 2003 U.S. Dist. LEXIS 25391 (D.V.I. 2003) (dismissing plaintiff's ADA claim against the Virgin Islands Police Department on the merits without discussing federal exemption clause); *Garcia-Figueroa v. Puerto Rico*, 204 F. Supp. 2d 281, 284 (D.P.R. 2002) (holding the Eleventh Amendment prevented ADA suit against Puerto Rico Department of Education without discussing ADA federal exemption); *Sifre v. Dep't of Health*, 38 F. Supp. 2d 91, 98-107 (D.P.R. 1999) (dismissing plaintiffs' ADA claims against Puerto Rico Department of Health on substantive grounds without discussing applicability of federal exemption).

necessarily be the same in all territories."); *see also United States v. Pollard*, 326 F.3d 397, 45 V.I. 672 (3d Cir. 2003), *reversing*, 209 F. Supp. 2d 525 (D.V.I. 2002) (Moore, J.); *United States v. Hyde*, 37 F.3d 116, 30 V.I. 475 (3d Cir. 1994), *reversing*, 1993 WL 733094 (D.V.I. 1993) (Moore, J.). Congress has exerted its control over the unincorporated territory of the United States Virgin Islands by establishing the Government of the Virgin Islands. *See* Revised Organic Act of 1954; 48 U.S.C. §§ 1541-1645. Therefore, as long as the federal government denies the Territory of the Virgin Islands incorporated status, the Government of the Virgin Islands will remain merely an instrumentality of the United States. It is an administrative representation of Congress' will, little different than any other federal administrative agency. Accordingly, I find that the ADA's exemption for the United States includes the congressionally-created instrument of the United States that is the Government of the Virgin Islands.

■ This conclusion is consistent with principles of statutory interpretation. The ADA's exemption is broadly written, including not only "the United States," but federally owned corporations and Native American tribes. The United States Supreme Court has recognized that "the powers of Indian tribes are, in general, inherent powers of a limited sovereignty which has never been estinguished. *"United States v. Wheeler*, 435 U.S. 313, 322, 55 L. Ed. 2d 303, 98 S. Ct. 1079 (1978). Native American tribes have retained some measure of sovereignty because, although they have ceded some of their pre-existing power to the federal government, not all of this sovereignty has been taken away by or transferred to the United States. *Id.* at 322-24. Given that the ADA exemption was written so broadly that it includes partially sovereign entities such as Native American tribes, it logically follows that Congress also intended to include completely subservient bodies such as the Government of the Virgin Islands. Thus, the unfortunate status of the local government as nothing more than an administrative extension of Congress' plenary control over the Territory of the Virgin Islands, combined with the broadness of the exemption cause, compel the conclusion that the Government of the Virgin Islands is not subject to the requirements of the ADA, and I must dismiss Count VI with prejudice.

485

## G. Count VII States A Cause Of Action Under The Family Medical Leave Act

The plaintiff vaguely alleges, at paragraph eighty-four of her amended complaint, that VIPA violated the Family Medical Leave Act ["FMLA"] by denying her additional donated leave. According to the amended complaint, the plaintiff applied for FMLA leave on November 6, 2001. The VIPA Board allegedly initially denied Smith's application on November 30, 2001, but later reversed its decision and granted Smith FMLA leave on January 16, 2002.

FMLA requires employers to provide up to twelve weeks of unpaid leave to any eligible employee who suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee."[9] 29 U.S.C. § 2612(a)(1)(D). The statute creates a private right of action entitling "eligible employees" to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a)(2), should that employer "interfere with, restrain, or deny the exercise of" FMLA rights. 29 U.S.C. § 2615(a)(1). Given that the plaintiff admits that she was eventually granted leave, I interpret her amended complaint as alleging that VIPA failed to adhere to the FMLA's requirements in denying her initial request. In particular, I interpret the plaintiff's complaint as alleging that

---

[9] Unlike the ADA, there is no question that VIPA qualifies as an "employer" under the FMLA. FMLA defines employer as including "any 'public agency' as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x))." 29 U.S.C. § 2611. Section 3(x) of the Fair Labor Standards Act of 1938 defines "public agency" as meaning

> the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency.

29 U.S.C. § 203(x). This broad definition includes VIPA.

Similarly, the plaintiff has sufficiently alleged facts to qualify as an eligible employee under FMLA. Under FMLA, an eligible employee is "an employee who has been employed for at least twelve months by the employer with respect to whom the leave is requested" and who has logged at least 1,250 hours of service with the employer during the previous twelve month period. 29 U.S.C. § 2611(2)(A). Smith began working for VIPA sometime in April, 1999, and VIPA has not claimed she failed to work at least 1,250 hours during the twelve months before filing for FMLA leave.

VIPA failed to follow the dictates of 29 U.S.C. § 2613 in requesting proof of her ailments.

Section 2613(a) permits an employer to require that a request for leave be supported by a certification from a health care provider. Subsection (b) of section 2613 lists certain information that must be included in the certification, including the date on which the serious health condition commenced, the probable duration of the condition, facts regarding the condition, a statement that the employee is unable to perform the functions of her job, and a statement of the necessity of intermittent leave. *See* 29 U.S.C. § 2613(a), (b). According to the Code of Federal Regulations, if the employer exercises this right, it (1) must provide written notice to the employee that it requires such certification and (2) must advise the employee of the consequences of a failure to provide certification. 29 C.F.R. § 825.305. Moreover, the employer must provide the employee with at least fifteen calendar days to submit the medical certification. 29 C.F.R. § 825.305. Failure to provide such notice and opportunity constitutes "interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.200. Once apprised of the need for medical certification, the employee "must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least fifteen calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b).

Moreover, if the employer "has reason to doubt the validity of the certification provided ..., the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer" concerning the information listed in subsection (b). 29 U.S.C. § 2613(c). The Code of Federal Regulations further explains the proper procedure the employer must follow in requesting second, and even third, opinions from alternative health care professionals:

> Pending receipt of the second (or third) medical opinion, the employee is provisionally entitled to the benefits of the Act, including maintenance of group health benefits. If the certifications do not ultimately establish the employee's entitlement to FMLA leave, the leave shall not be designated as FMLA leave and may be treated as paid or unpaid leave under the employer's established

leave policies. The employer is permitted to designate the health care provider to furnish the second opinion, but the selected health care provider may not be employed on a regular basis by the employer.

...

If the opinions of the employee's and the employer's designated health care providers differ, the employer may require the employee to obtain certification from a third health care provider, again at the employer's expense. This third opinion shall be final and binding. The third health care provider must be designated or approved jointly by the employer and the employee.

29 C.F.R. § 825.307(a)(2), (c).

▉ Interpreting the amended complaint in the plaintiff's favor, I find that this *pro se* plaintiff has alleged minimum facts sufficient to support a claim that VIPA failed to follow the requirements of 29 U.S.C. § 2613 and the corresponding regulations. If, as the plaintiff alleges, VIPA was unsatisfied with the completeness of Dr. Buchalter's certification, it could have requested that he supplement his analysis. *See* 29 C.F.R. § 825.207(a) (providing that an employer must refrain from requesting additional information only if the employee submits a *complete* certification). Alternatively, if VIPA doubted the validity of Dr. Buchalter's certification, it should have followed the requisite procedures for obtaining second and third opinions.

Unfortunately, VIPA's mere four-sentence statement in support of dismissing the plaintiff's FMLA claim does not aid my analysis of the plaintiff's cause of action under section 2631.[10] VIPA appears to assume, without providing any authority, that because Smith was ultimately granted FMLA leave that she has no claim under FMLA at all. VIPA's cursory argument does not establish that the plaintiff has not stated an FMLA claim. I will, however, dismiss this count as it applies to the

---

[10] The defendants' arguments regarding this and many other claims presented in the amended complaint are woefully incomplete, inadequate, and incompetent. For example, in discussing the plaintiff's FMLA claim, the defendants fail to even cite to the portion of the United States Code that codifies FMLA, let alone provide any analysis of the statutory language. (Defs.' Mot. to Dismiss at 8.) Even worse, the defendants do not even bother to address many of the claims raised in the amended complaint, thereby making this Court's consideration of VIPA's motion to dismiss unnecessarily difficult and time consuming.

individual defendants, as I agree with the Sixth Circuit Court of Appeals that public agency employees are not liable in their individual capacities under FMLA. *See Mitchell v. Chapman*, 343 F.3d 811, 825-33 (6th Cir. 2003).

## H. Count VIII Fails To State A Claim For Intentional Infliction of Emotional Distress

The plaintiff alleges in Count VIII that all the defendants intentionally subjected her to emotional distress. To state a claim for the tort of intentional infliction of emotional distress, the plaintiff must allege conduct so extreme or outrageous on its face that it falls outside the bounds of decency. *See* RESTATEMENT (SECOND) OF TORTS § 46. The aggrieved conduct "by itself must have been so outrageous and so beyond all bounds of decency to be considered atrocious and utterly intolerable in a civilized society." *See Seafarers Intern. Union of North America v. Thomas*, 42 F. Supp. 2d 547, 557, 40 V.I. 218 (D.V.I. 1999) (quoting *Codrington v. Virgin Islands Port Auth.*, 911 F. Supp. 907, 916, 33 V.I. 215, 33 V.I. 245 (1996)). "It is not enough that the defendant acted with tortious intent or even that he acted with malice." *Int'l Islamic Cmty. of Masjid Baytulkhaliq, Inc. v. United States*, 981 F. Supp. 352, 369, 37 V.I. 287 (1997), *aff'd*, 176 F.3d 472 (3d Cir. 1999) (unpublished table decision).

██ The plaintiff complains of being overworked, not receiving notice of important meetings, having to fill out excessive paperwork to order office supplies, being denied medical leave, being allowed to travel to only one conference a year, being given insufficient and biased process in conjunction with her suspensions, and being treated "worse than a criminal." (Am. Compl. ¶ 108.) Even if all of these unfortunate allegations are true, I find that they fail to meet the extremely high standard to state a viable cause of action for intentional infliction of emotional distress. I will accordingly dismiss Count VIII in its entirety with prejudice.

## I. Count IX States A Claim For Constructive Discharge

██ To establish a claim of constructive discharge, "the plaintiff must allege ... that she resigned because her employer made her working conditions so unpleasant or difficult that she was forced to resign." *Harley v. Caneel Bay, Inc.*, 193 F. Supp. 2d 833, 838 (D.V.I. 2002). To

establish constructive discharge, the employer's unpleasant working conditions must have violated the plaintiff's legal rights. *See, e.g., Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 888 (3d Cir. 1984) (upholding a claim of constructive discharge based on employer's sex discrimination). The plaintiff has alleged sufficient facts in her amended complaint that VIPA's conduct forced her to resign her position. I will therefore deny VIPA's motion to dismiss as it applies to Count IX. I will, however, dismiss this count to the extent it includes the individual defendants, as these individual defendants did not employ the plaintiff and therefore could not have constructively discharged her.

## IV. CONCLUSION

For the foregoing reasons, I rule the amended complaint alleges sufficient facts to support five causes of action against VIPA, and one cause of action against the individual defendants. Specifically, Count I states a claim for breach of contract against VIPA, but fails to state a viable claim for unfair labor practices or invasion of privacy. Count II's allegations of "civil conspiracy" and "wrongful suspension" are meaningless and will be dismissed, whereas its allegation of a violation of the Fourteenth Amendment will be dismissed as duplicative of Count V. Count III states a claim against VIPA for hostile work environment sexual harassment under Title VII of the Civil Rights Act of 1964. I will dismiss Count IV's claim of discrimination and retaliation because, at best, it simply re-alleges Count I's breach of contract claim. Of the many allegations in Count V, the plaintiff's procedural due process claim against all the defendants and her claim that VIPA suspended her for non-merit reasons in violation of 3 V.I.C. § 531 may survive this motion to dismiss. Count VI's ADA claim against VIPA will be dismissed because the Act's broad federal exemption includes a component of territorial governments of the unincorporated Territory of the Virgin Islands such as VIPA. Count VII states a valid claim that VIPA failed to follow procedures required by the Family Medical Leave Act in denying the plaintiff's initial request for leave. The amended complaint does not allege facts sufficient to support a claim for intentional infliction of emotional distress, thus Count VIII will be dismissed. Finally, Count IX states a valid claim for constructive discharge against VIPA. An appropriate order follows.